## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **AIRICA STEED, ED.D.** | ) | **CASE NO. 1:25-CV-00443-PAB** |
| | ) | |
| **Plaintiff,** | ) | **Judge Pamela A. Barker** |
| | ) | |
| **v.** | ) | **ANSWER AND AFFIRMATIVE** |
| | ) | **DEFENSES OF ALL DEFENDANTS TO** |
| **METROHEALTH SYSTEM, ET AL.,** | ) | **AMENDED COMPLAINT;** |
| | ) | **COUNTERCLAIMS OF DEFENDANT,** |
| **Defendants.** | ) | **METROHEALTH** |
| | ) | |
| | ) | **JURY DEMAND ENDORSED HEREIN** |
| | ) | |

Defendants, The MetroHealth System ("MetroHealth"), John Moss, Tamiyka Rose, E. Harry Walker, M.D., Laura McBride, Sonja Rajki, Sarah Partington, and Robin Barre (collectively "Defendants"), by and through undersigned counsel, and for their Answer to the Amended Complaint[1] (the "Complaint") of Airica Steed, Ed.D. ("Plaintiff" or "Dr. Steed"), states as follows:

### PARTIES

1. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1; therefore, the allegations are denied.

2. Defendants admit that MetroHealth is a hospital with its principal place of business in Cuyahoga County, Ohio. MetroHealth is a county hospital system and operates under and is governed by Chapter 339 of the Ohio Revised Code. Defendants deny each and every remaining allegation contained in Paragraph 2.

3. Defendants admit that John Moss ("Moss") was a member of the Board of Trustees of MetroHealth (the "Board") during all times relevant to the Complaint and is a resident of

---

[1] Pursuant to the Court's Standing Order, Defendants submit this Answer in conjunction with Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) on Counts IV (Wrongful Discharge in Violation of Public Policy) and Count X (Invasion of Privacy) as to Defendant MetroHealth and Count V (Defamation) and Count IX (Hostile Work Environment) as to all Defendants.

Cuyahoga County, Ohio. Defendants deny each and every remaining allegation in Paragraph 3.

4.      Defendants admit that Tamiyka Rose ("Rose") was employed by MetroHealth as its Board Liaison and was employed in and worked in Cuyahoga County, Ohio during all times relevant to the Complaint. Defendants deny each and every remaining allegation in Paragraph 4.

5.      Defendants admit that E. Harry Walker, M.D. ("Dr. Walker") was a member of the Board during all times relevant to the Complaint and is a resident of Cuyahoga County, Ohio. Defendants deny each and every remaining allegation in Paragraph 5.

6.      Paragraph 6 does not contain any allegations to which a response is required. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 6.

7.      Defendants admit that Laura McBride ("McBride") served as General Counsel at MetroHealth until August 2024 and is a resident of Cuyahoga County, Ohio. Defendants deny each and every remaining allegation in Paragraph 7.

8.      Defendants admit that Sonja Rajki ("Rajki") served as General Counsel at MetroHealth until June 2024 and is a resident of Cuyahoga County, Ohio. Defendants deny each and every remaining allegation in Paragraph 8.

9.      Defendants admit that Sarah Partington ("Partington") was the Director of Compliance Operations/Senior Compliance Officer at MetroHealth and was employed in and worked in Cuyahoga County, Ohio during all times relevant to the Complaint. Defendants deny each and every remaining allegation in Paragraph 9.

10.     Defendants admit that Robin Barre ("Barre") served as Director of Compliance at MetroHealth and was employed in and worked in Cuyahoga County, Ohio during all times relevant to the Complaint. Defendants deny each and every remaining allegation in Paragraph 10.

## JURISDICTION

11.     Paragraph 11 states legal conclusions to which no response is required. To the extent a response is required, Defendants state that they are not disputing this Court's jurisdiction. Defendants deny each and every remaining allegation in Paragraph 11.

12.     Paragraph 12 states legal conclusions to which no response is required. To the extent a response is required, Defendants state that they are not disputing this Court's jurisdiction over Defendants. Defendants deny each and every remaining allegation in Paragraph 12.

13.     Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, Defendants state that they are not disputing that venue is proper. Defendants deny each and every remaining allegation in Paragraph 13.

## FACTS COMMON TO ALL COUNTS

### *Steed's Employment at MetroHealth*

14.     Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

15.     Defendants admit that in early 2022, MetroHealth began the recruiting process to replace the then-current Chief Executive Officer ("CEO"), Dr. Akram Boutros ("Dr. Boutros"), who had announced his retirement in late 2021. Defendants deny each and every remaining allegation in Paragraph 15.

16.     Defendants admit that MetroHealth considered Plaintiff for the position of MetroHealth CEO based upon certain credentials and criteria and received a "Leadership Profile" from a national search firm, Witt Kieffer. Defendants deny each and every remaining allegation in Paragraph 16.

17.     Defendants state that the document referenced in Paragraph 17, the Leadership

Profile, speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 17.

18.     Defendants admit that on or about September 21, 2022, Plaintiff signed an at-will Employment Agreement and on December 5, 2022, Plaintiff signed an amendment to the same (collectively, the "Employment Agreement"), pursuant to which Plaintiff was employed as MetroHealth's President and CEO. Defendants further admit that on or about December 12, 2022, Plaintiff signed an Amended and Restated Section 457(f) Non-Qualified Compensation Plan document (the "457(f) Agreement"). Further answering, Defendants state that the documents referenced in Paragraph 18 speak for themselves and deny any allegations in Plaintiff's Complaint inconsistent with such documents. To the extent a further response is required, Defendants deny each and every remaining allegation contained in Paragraph 18.

19.     Defendants admit the allegations contained in Paragraph 19.

20.     Upon information and belief, Plaintiff references the written statement issued by MetroHealth on or about September 22, 2022. Defendants state that the statement referenced in Paragraph 20 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent a further response is required, Defendants deny each and every remaining allegation contained in Paragraph 20.

21.     Defendants admit that at the November 22, 2022 meeting of the Board, the Board authorized its Chair to negotiate and execute an amendment to the Employment Agreement with Plaintiff. Defendants further admit that Plaintiff executed the amendment and that her employment began on December 5, 2022. Defendants deny each and every remaining allegation contained in Paragraph 21.

22.     Defendants admit that at the November 22, 2022 meeting of the Board, the Board terminated the employment of MetroHealth's then-CEO, Dr. Boutros. At this same meeting, the Board authorized its Chair to negotiate and execute an amendment to the Employment Agreement with Plaintiff. Defendants further admit that Plaintiff executed the amendment and that her employment began on December 5, 2022. Defendants deny each and every remaining allegation contained in Paragraph 22.

23.     Defendants admit the allegations contained in Paragraph 23.

24.     Defendants deny each and every allegation contained in Paragraph 24. Further answering, any heightened scrutiny, oversight, or control was a result of Plaintiff's failure to meet performance expectations in her role as CEO and failure to adhere to Board directives and MetroHealth policies. In addition, following MetroHealth's decision to terminate Dr. Boutros for cause, the Board sought to strengthen policies and processes and improve organizational oversight across MetroHealth.

25.     Defendants deny each and every allegation contained in Paragraph 25. Further answering, Defendants note that the allegations reflect Plaintiff's continued misunderstanding and/or disregard for the fact that: (a) pursuant to Chapter 339 of the Ohio Revised Code, the Board has "the entire management and control of the county hospital," which authority the Board may delegate, at its discretion, to an administrator/chief executive officer; and (b) pursuant to the Ohio Rules of Professional Conduct, as attorneys employed by MetroHealth, Rajki and McBride (collectively, "General Counsels") owed professional and ethical obligations to MetroHealth and, in the event of conflict between the Board and CEO, must defer to the Board as the body with the ultimate authority and responsibility for MetroHealth. Plaintiff was unwilling to accept that the attorneys working on behalf of MetroHealth, including the General Counsels, had a duty of loyalty

to MetroHealth, as opposed to just her personally.

26.     Defendants deny each and every allegation contained in Paragraph 26.

27.     Defendants deny each and every allegation contained in Paragraph 27.

28.     Defendants deny each and every allegation contained in Paragraph 28.

29.     Defendants admit that the Ohio Auditor of State conducted a special audit concerning Dr. Boutros's conduct. Defendants deny each and every remaining allegation contained in Paragraph 29.

30.     Defendants deny each and every allegation contained in Paragraph 30. Further answering, Defendants McBride, Rajki, Partington, and Barre presented concerns that had been alleged regarding Plaintiff to the Board in accordance with the policies and processes of MetroHealth and the ethical duties underlying their positions as MetroHealth employees. Specifically, the General Counsels were required to escalate concerns regarding the CEO to the Board Chair within 48 hours of receipt. (MetroHealth System Policy EC-05, paragraph 6.1.) This policy was reiterated to Plaintiff in a February 14, 2024 e-mail from Dr. Walker to Dr. Steed, in which Dr. Walker expressly wrote to Dr. Steed that "[a]s a representative of the Board I strongly feel the Board needs to be aware of all complaints regarding the CEO."

31.     Defendants deny each and every allegation contained in Paragraph 31. Further answering, at all times, Defendants McBride, Rajki, Partington, and Barre acted in accordance with MetroHealth policies and procedures. Per MetroHealth and Board policies, there is no obligation to include Human Resources or Plaintiff when escalating concerns regarding the CEO to the Board.

32.     Defendants deny each and every allegation contained in Paragraph 32.

33.     Defendants deny each and every allegation contained in Paragraph 33.

34.     Defendants deny each and every allegation contained in Paragraph 34.

35.     Defendants admit that Dalph Watson ("Watson") was hired in or around July of 2023 as the Chief People Officer of MetroHealth. Defendants deny each and every remaining allegation contained in Paragraph 35. Defendants are unaware of any concern raised by Plaintiff to the Chief People Officer until a year later, in June 2024, and after the Board attempted to address concerns regarding Plaintiff's performance.

36.     Defendants deny each and every allegation contained in Paragraph 36.

37.     Defendants admit that Rose was hired by MetroHealth in or around January of 2024 to serve as Manager, Board Relations/Board Liaison. Defendants further admit that as Board Liaison, Rose reported directly to the Board Chair, worked for the entire Board, and her duties included collaborating with the CEO, the General Counsels, and other members of the senior leadership team. Further answering, Defendants state that, consistent with Rose's duties, Plaintiff worked closely with Rose. At no point did Rose harass or discriminate against Plaintiff. To the contrary, at one point, Plaintiff attempted to change MetroHealth's organizational chart so that Rose would report directly to her in a Chief of Staff role. Rose declined this offer and remained Board Liaison, continuing to collaborate with Plaintiff. Defendants deny each and every remaining allegation contained in Paragraph 37.

38.     Defendants deny each and every allegation contained in Paragraph 38. Further answering, Dr. Walker directly informed Plaintiff in writing via e-mail that it was his decision as Board Chair, "with an abundance of caution," to ask "for an outside counsel to assist in a fact gathering investigation" of a complaint of retaliation raised by a former MetroHealth vice president. Defendants further state, as General Counsels, McBride and Rajki had a duty to represent MetroHealth, for which the ultimate authority is the Board, and not the CEO. To the extent Plaintiff

is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver—and remind Plaintiff and her counsel—that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

39.     Defendants deny each and every allegation contained in Paragraph 39. Further answering, Defendants note that the policy regarding investigations pre-existed Dr. Steed's hiring and was revised in early 2024 at the request of Dr. Walker, as Board Chair, and through privileged meetings and discussions between Dr. Steed, Watson, and McBride.

40.     Defendants deny each and every allegation contained in Paragraph 40. Further answering, Plaintiff failed to comply with her obligations, perform the job duties required of her as CEO, or meet the Board's legitimate expectations. In a 360 review, conducted in or around March of 2024 (the "360 Review"), Plaintiff was evaluated across 7 performance areas. While the Board almost unanimously gave Plaintiff a generally neutral rating, recognizing that it was her first year of employment, several critical issues with Plaintiff's performance were identified. As a result, the Board provided a memorandum to Plaintiff summarizing the Evaluation Report (the "CEO Evaluation Summary") outlining where improvement was necessary and recommending actionable steps to realize improvement. In May of 2024, the Board provided Plaintiff with a second memorandum reiterating the goals and recommendations previously outlined to Plaintiff after her 360 Review. The Board also met with Plaintiff on or about May 10, 2024 to discuss Plaintiff's performance and the clear expectations the Board had for Plaintiff. Plaintiff failed to address the issues highlighted by the Board, failed to respond to the Board, and did not provide the updates to the Board as required. Between May and July of 2024, Plaintiff cancelled at least three meetings with the Board Chair and Vice-Chair. In addition, Plaintiff engaged in insubordinate conduct, exhibiting a blatant disregard for the Board's overall authority and ignoring

its responsibility for MetroHealth.

41.    The allegations contained in Paragraph 41 do not form the basis for a legal claim against Defendants and, therefore, no response is required. To the extent a response is required, Defendants admit that, despite Plaintiff's disruptive and insubordinate behavior, MetroHealth's net revenue increased from $1.601 billion for the 2022 calendar year to $1.812 billion for the 2023 calendar year, a result of initiatives that, in part, began prior to Dr. Steed's hiring. Defendants further answer that Plaintiff conducted listening sessions, Leadership Listening Rounds, and Ask the CEO sessions. Defendants further state that the audio and/ or documents related to the listening sessions, Leadership Listening Rounds, and Ask the CEO sessions speak for themselves and deny any allegations in Plaintiff's Complaint inconsistent with such audio and/ or documents. Defendants deny each and every remaining allegation contained in Paragraph 41.

42.    The allegations contained in Paragraph 42 do not form the basis for a legal claim against Defendants and, therefore, no response is required. To the extent a response is required, Defendants admit that MetroHealth's HHS levy subsidy was raised. Defendants deny each and every remaining allegation contained in Paragraph 42.

43.    The allegations contained in Paragraph 43 do not form the basis for a legal claim against Defendants and, therefore, no response is required. To the extent a response is required, Defendants admit that Dr. Boutros was terminated because the Board concluded he had paid himself over $1.9 million in unauthorized cash compensation, and that it was this issue that was the center of any "controversy" preceding the beginning of Plaintiff's employment. Defendants deny each and every remaining allegation contained in Paragraph 43.

44.    Defendants deny that Plaintiff's termination was unlawful. The remaining allegations contained in Paragraph 44 do not form the basis for a legal claim against Defendants

and, therefore, no response is required. To the extent a further response is required, Defendants admit that Plaintiff was recognized by Modern Healthcare and obtained a seat with the Ohio Hospital Association but deny each and every remaining allegation contained in Paragraph 44.

45.     Upon information and belief, Plaintiff references the written statements issued by MetroHealth on or about February 18, 2023 (quoting former Board Chair, Vanessa Whiting) and December 4, 2023 (quoting Dr. Walker). Defendants state that the statements referenced in Paragraph 45 speak for themselves and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent a further response is required, Defendants deny each and every remaining allegation contained in Paragraph 45.

46.     Defendants deny each and every allegation contained in Paragraph 46.

47.     Defendants admit that MetroHealth performed the 360 Review of Plaintiff, but deny that this review was the basis of Plaintiff's incentive compensation payment. Further answering, Defendants state that pursuant to Plaintiff's Employment Agreement, Plaintiff was an eligible participant in the Board-authorized, at-risk incentive compensation program called Performance Based Variable Compensation ("PBVC"). Pursuant to this program, a specified portion of participants' potential cash compensation was at-risk (that is, not guaranteed), and payable only depending on MetroHealth's performance with respect to certain objective, Board-approved criteria. The 2023 PBVC goals were set by the Board in March 2023, and included objective criteria over the domains of financial performance, strategy and growth, quality and service, clinical transformation and health equity, human capital and diversity, and innovation and research. In March 2024, the Board reviewed and approved the MetroHealth achievements against these goals, with an aggregate achievement level of 121% of target. Thus, Plaintiff and every other eligible participant in the PBVC program received an incentive payment of 121% of target.

Further answering, Defendants deny the allegation that Plaintiff exceeded the stated goals for every measure of her 360 Review. Over one-third of Plaintiff's direct reports consistently rated Plaintiff as needing improvement on almost all criteria. Several critical issues were identified through the 360 Review of Plaintiff. The Board provided Plaintiff with the CEO Evaluation Summary, outlining where improvement was necessary: (i) enhance transparency in decision-making; (ii) increase visibility on campus; (iii) stabilize MetroHealth's leadership team; (iv) enhance her understanding of the Board's role as well as the role of Board communications; and (v) create a plan with quantifiable metrics describing how MetroHealth plans to eradicate health disparities. Defendants deny each and every remaining allegation contained in Paragraph 47.

48.     Defendants deny each and every allegation contained in Paragraph 48. Further answering, the Board is responsible for the evaluation of the CEO. The Board conducted the 360 Review in consultation with its third-party consultant, The Governance Institute. The Governance Institute identified the 360 Review as a best practice for Plaintiff's evaluation—and such a review was performed for Plaintiff's predecessor, Dr. Boutros. The Governance Institute would collect, review, and produce a performance evaluation report based on the reviews. Despite being contrary to common practice, at Plaintiff's request, the Board permitted several newly hired individuals with limited knowledge of Plaintiff's performance as CEO to participate in the review process. As part of the process, Plaintiff submitted a self-assessment, identifying areas in which she recognized the need for improvement. The Board almost unanimously gave Plaintiff a generally neutral rating, recognizing it was her first year.

49.     Defendants deny each and every allegation contained in Paragraph 49. Further answering, at no point was Plaintiff's authority or decision making, as it pertained to hiring a leadership team, impacted as a result of being in a protected class. In early May and June of 2024,

Plaintiff and Board representatives interviewed candidates for the Chief Legal Officer ("CLO") role to be hired following the separation with the General Counsels. A candidate was resoundingly supported by Plaintiff, the Board representatives, and others, and was offered a position, but did not accept. Then, Plaintiff, without informing the Board or anyone else, unilaterally decided to extend an offer to another candidate—one about whom the Board had expressed reservations and with full awareness that the Board was still working with her to conduct interviews. The Board only became aware of Plaintiff's decision after it directed her to hold off on hiring until they could discuss the remaining applicants, to which she responded that she had already extended an offer. The need for both Plaintiff and the Board to agree on a candidate was important given that the CLO has unique obligations to both the Board and management and that Plaintiff's frustrations with previous legal advice were readily apparent. Plaintiff's unilateral decision to employ her choice for the CLO position after Dr. Walker's request as Board Chair for continued Board involvement was insubordination and a blatant disregard of the Board's overall authority and responsibility for MetroHealth.

50.     Defendants state that the email correspondence referenced in Paragraph 50 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. To the extent a further response is required. Defendants deny each and every remaining allegation contained in Paragraph 50.

51.     Paragraph 51 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 51. Further answering, Defendants state that Plaintiff raised concerns to Watson on June 27, 2024, stating that she was "subjected to a toxic hostile and unfair work environment[,]" but she retracted this concern *the same day*. While Defendants acknowledge that Plaintiff raised frustrations about

her relationship with the General Counsels to the Board, Defendants have no knowledge of Plaintiff alleging discrimination or hostile work environment until this date. To the contrary, Plaintiff regularly met with the General Counsels and provided them with positive feedback about their performance. And, at the time Plaintiff voiced these concerns, the General Counsels had already reached separation agreements with MetroHealth and Rajki had ended her employment one month earlier. In the negotiated separation agreements, Plaintiff and Watson agreed to release both General Counsels from any claims that could be brought by MetroHealth against them. The General Counsels agreed to release all claims against MetroHealth. At no time during the negotiation of the separation agreements with the General Counsels did Plaintiff or Watson raise any allegations of hostile work environment or discrimination. In fact, when Plaintiff notified the Chair and Vice Chair of the Board via a March 9, 2024 that an agreement had been reached with the General Counsels as to the terms of their departures, Plaintiff wrote that their separation was a result of a decision "to migrate away from the co-General Counsel model" and that the separation decision "is in no way a reflection of performance or any other reason." Moreover, Plaintiff did not raise concerns of a race and sex discrimination until July 16, 2024. In that complaint, Plaintiff largely restated her baseless grievances regarding being subject to scrutiny, while now adding a conclusion that these events must have, from her point of view, been based on her gender and race. In support of her conclusion of malicious intent, Plaintiff referenced the completely anonymous, unsubstantiated complaints that, at the time, had only recently been submitted to the MetroHealth Ethics Line ("MEL"), and asserted that her predecessors had never received scrutiny and criticism. On this latter point, Plaintiff seemingly ignored that her immediate past predecessor had been terminated by the Board that hired her. At all times, MetroHealth took all allegations of discrimination, harassment, and toxic work environment seriously and addressed them

appropriately in accordance with MetroHealth policies. MetroHealth found that Plaintiff's allegations of underlying discrimination and a hostile and toxic work environment were unsubstantiated. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

52.     Defendants admit that Plaintiff raised concerns of discrimination, harassment, and toxic work environment on July 16, 2024. The remaining allegations state legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every remaining allegation contained in Paragraph 52. MetroHealth, per MetroHealth policies, subsequently determined that Plaintiff's claims of discrimination, harassment, and toxic work environment were meritless. It is apparent that Plaintiff, aware of MetroHealth's increasing concerns with her performance issues, raised these concerns in an effort to try to distract or delay attention from her performance issues and support her later allegations set forth in the Complaint.

53.     Defendants admit that Dr. Walker and members of the Special Investigative Committee of the Board became aware of Plaintiff's complaint on or about July 18, 2024 when it was forwarded to them by Mr. Primes. Defendants deny each and every remaining allegation contained in Paragraph 53.

***Steed's Suspicion of Felonious Conduct at MetroHealth***

54.     Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

55.     The allegations contained in Paragraph 55 do not form the basis for a legal claim against Defendants and, therefore, no response is required. To the extent a response is required, Defendants admit that Terry Monnolly was a prior Board member who served as Chair of the

Facilities and Planning Committee until resigning in December 2022, but deny each and every remaining allegation contained in Paragraph 55.

56.     The allegations contained in Paragraph 56 do not form the basis for a legal claim against Defendants and, therefore, no response is required. To the extent a response is required, Defendants admit that Craig Richmond served as MetroHealth Chief Financial Officer until March 2023, but deny each and every remaining allegation contained in Paragraph 56.

57.     The allegations contained in Paragraph 57 do not form the basis for a legal claim against Defendants and, therefore, no response is required. To the extent a response is required, Defendants admit that a forensic accounting examination and analysis report by the BDO accounting firm was finalized on February 22, 2023 and that Mr. Richmond resigned his employment effective February 28, 2023, and deny each and every remaining allegation contained in Paragraph 57.

58.     Defendants admit that Derrick Hollings was hired by Plaintiff to serve as Chief Financial Officer of MetroHealth on or about September of 2023.

59.     Defendants deny each and every allegation contained in Paragraph 59. Further answering, Defendants state that MetroHealth, after subsequently conducting an appropriate investigation in accordance with MetroHealth procedures, including a forensic review of e-mails and files, and concluded that there is no evidence that any of the referenced emails or hard drives were deleted or destroyed, and no evidence that the Legal Department or any other MetroHealth employee illegally or inappropriately destroyed, deleted, or tampered with public records.

60.     Defendants deny each and every allegation contained in Paragraph 60. Further answering, Defendants state that it appears that the most likely root of Dr. Steed's allegation are her willful distortion of MetroHealth's adoption of a lawful 15-month email retention policy in

2019 that was executed by the Information Services Department at the direction of former CEO, Dr. Boutros.

61.     Defendants deny each and every allegation contained in Paragraph 61. Further answering, a legal investigation found no evidence of missing or wrongfully deleted records.

62.     Defendants deny each and every allegation contained in Paragraph 62.

63.     Defendants deny each and every allegation contained in Paragraph 63 and state that Plaintiff's allegations include gross, reckless misstatements made without any knowledge of the underlying facts.

64.     Defendants admit that Hollings asked Fiser for information regarding MetroHealth's e-mail retention procedures. Defendants further admit that Fiser prepared a PowerPoint presentation for Mr. Hollings that summarized developments in MetroHealth's e-mail retention procedures. That PowerPoint accurately summarized that prior to 2019, MetroHealth retained e-mails indefinitely. In 2019, MetroHealth, under Dr. Boutros's direction, adopted a 15-month rolling retention period for e-mails that otherwise were not subject to a longer retention period under Ohio law or MetroHealth policy. Fiser's PowerPoint also made clear that the Legal Department ensured that those individuals whose e-mails had to be preserved for a longer period because of a litigation hold were not impacted by the 15-month retention procedure; that employees were instructed on how to preserve records that existed only in e-mail form and were required to be preserved for a longer period of time; and that the Legal Department specifically ensured that Dr. Boutros's e-mails were preserved. Fiser's PowerPoint also included an appendix showing that e-mail histories existed for all key executives for all required periods. Defendants deny each and every remaining allegation contained in Paragraph 64.

65.     Defendants deny each and every allegation contained in Paragraph 65. Further

answering, Defendants deny that Fiser ever made any statement or "admission" regarding Defendants McBride and Rajki's directions and further state that Plaintiff's allegations include gross distortions made without any knowledge of, or in reckless disregard of, the underlying facts. Defendants further state that, as described in Paragraph 64 above, the Legal Department was appropriately involved in assessing the 2019 change in the email retention policy that was directed and approved by then-CEO Dr. Boutros.

66.     Defendants deny each and every allegation contained in Paragraph 66. Defendants further state that, again, Plaintiff's allegations include gross misstatements made without any knowledge of, or in reckless disregard of, the underlying facts.

67.     Defendants admit the allegations contained in Paragraph 67.

68.     Defendants deny each and every allegation contained in Paragraph 68.

69.     Defendants deny each and every allegation contained in Paragraph 69.

70.     Defendants deny each and every allegation contained in Paragraph 70. Further answering, since 2016, MetroHealth has used the services of a third-party vendor to provide necessary internal audit services for an outsourced Internal Audit function. The outsourced Internal Audit function has always directly reported to the Board through the Audit & Compliance Committee of the Board. Consistent with that approach, it was the Board, based on management's recommendation, that selected Ernst & Young ("E&Y") as its new Internal Audit function vendor at its February 28, 2024 and March 27, 2024 Special Audit & Compliance Committee and full Board meetings. Initiating and performing a risk assessment is typically the first step in the internal audit process. E&Y performing a routine internal audit risk assessment is in the ordinary course of internal audit work and was not in reaction to any event or concern. With regard to allegations of missing or deleted records, E&Y specifically stated in their risk assessment summary that these

allegations were not validated by E&Y.

71.     Defendants admit that E&Y made the Board and Plaintiff aware of certain concerns, but deny that E&Y validated any concerns as to missing or deleted emails or public records; it did not. Defendants deny each and every remaining allegation set forth in Paragraph 71.

72.     Defendants deny each and every allegation contained in Paragraph 72. Further answering, Defendants state that the routine internal audit risk assessment by E&Y was discussed during the June 26, 2024 Board meeting, but E&Y never made any preliminary findings as to missing or deleted emails or public records.

73.     In response to allegations set forth in Paragraph 73, Defendants admit that E&Y informed the Board in June 2024 that unsubstantiated allegations had been raised during its risk assessment process that E&Y could not validate. Defendants further admit that E&Y informed the Board that it could not continue its Internal Audit support function and suggested that the Board review the allegations, including forensically as appropriate. With respect to allegations of record deletion specifically, the Board subsequently did conduct a legal investigation that included the services of a data forensics expert. The legal investigation confirmed that there had been no inappropriate deletion of records. Defendants deny each and every remaining allegation in Paragraph 73.

74.     Defendants deny each and every allegation contained in Paragraph 74. Further responding, Defendants deny that the Board obstructed an investigation into the allegation of deletion of records. To the contrary, a special committee of the Board oversaw a legal investigation led by outside counsel and supported by a data forensics expert that confirmed that there had been no inappropriate deletion of records.

75.     Defendants deny each and every allegation contained in Paragraph 75.

76.     Defendants deny each and every allegation contained in Paragraph 76. Further answering, Defendants state that Plaintiff cancelled at least three meetings with the Board Chair and/or Vice Chair between May and July of 2024, and that McBride served as General Counsel to MetroHealth and, in that role, appropriately and regularly counseled the Board.

77.     Paragraph 77 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 77. Defendants further state that Plaintiff's allegations are reckless, uninformed, and also largely unintelligible.

78.     Defendants deny each and every allegation contained in Paragraph 78.

79.     Consistent with Board policies, MetroHealth conducted a legal investigation into certain anonymous complaints with the assistance of outside legal counsel, all of which were found to be unsubstantiated. Defendants deny each and every remaining allegation contained in Paragraph 79.

80.     Defendants deny each and every allegation contained in Paragraph 80.

81.     Defendants admit that it received an anonymous, unsubstantiated written complaint via the MEL regarding missing/deleted emails and public records on or around late June 2024. Defendants deny each and every remaining allegation contained in Paragraph 81.

82.     Defendants admit that Plaintiff, without including or notifying the Board, engaged Marlon Primes, through the law firm Brennan, Manna & Diamond, LLC, to provide services as interim CLO on or about July 1, 2024. Plaintiff's conduct was a continuation of her blatant disregard of the Board's overall authority and responsibility for MetroHealth. Defendants deny each and every remaining allegation contained in Paragraph 82.

83.     Defendants admit that anonymous, unsubstantiated MEL complaints were

submitted regarding the Interim Chief Legal Officer role. Consistent with Board policies, MetroHealth conducted a legal investigation into the allegations contained in Paragraph 83 and the legal investigation determined that there was no evidence that racial epithets were used. Defendants deny each and every remaining allegation contained in Paragraph 83.

84. Paragraph 84 states legal conclusions to which no response is required. To the extent a response is required, Defendants deny Plaintiff's allegations contained in Paragraph 84. Further answering, Defendants aver that, to Defendant's knowledge, on or about June 27, 2024 was the first time that Plaintiff raised concerns of a toxic and unfair work environment to her subordinate, Chief People Officer Dalph Watson. According to Plaintiff, this concern was directed only at the General Counsels, who had already agreed to separation agreements with MetroHealth over three months earlier. Plaintiff retracted her concerns the same day. She stated her "concerns have been taken seriously" and that the matter was "under control." Defendants further admit that on July 16, 2024, Plaintiff raised concerns of a hostile work environment and race and sex discrimination. Defendants deny each and every remaining allegation contained in Paragraph 84.

85. Defendants deny each and every allegation contained in Paragraph 85.

86. Defendants admit that Plaintiff, without the initial knowledge or coordination of the Board, sought the advice of outside counsel. Defendants deny each and every remaining allegation containing in Paragraph 86. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

87. Defendants deny each and every allegation contained in Paragraph 87. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such

communications is prohibited by Ohio law.

88.     Defendants admit the allegation contained in Paragraph 88.

89.     In response to the allegations made in Paragraph 89, Defendants admit that Mr. Primes met with Dr. Walker and Mr. Moss but deny Plaintiff's characterization of that meeting and the remaining allegations set forth in Paragraph 89. Further, to the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

90.     Defendants state that the July 12, 2024 email referenced in Paragraph 90 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. Defendants deny the remaining allegations contained in Paragraph 90. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

91.     In response to the allegations set forth in Paragraph 91, Defendants admit that Benesch interviewed McBride on July 18, 2024, and that, upon Benesch's request and given that it was her last day in the office, she handed her computer to them in lieu of the normal procedure. Defendants deny any remaining allegations contained in Paragraph 91. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

92.     Defendants deny each and every allegation contained in Paragraph 92. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege,

Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

93.     Defendants admit that on or about June 27, 2024, Plaintiff raised concerns of a toxic and unfair work environment to Watson and then retracted them the same day. Defendants further admit that on July 16, 2024, Plaintiff raised concerns of a hostile work environment and race and sex discrimination. Defendants deny each and every remaining allegation contained in Paragraph 93.

94.     Defendants deny each and every allegation contained in Paragraph 94.

95.     Defendants admit that Dr. Steed raised concerns on July 16, 2024. Defendants deny each and every remaining allegation contained in Paragraph 95.

96.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 96; therefore, they are denied. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

97.     Defendants admit to receiving anonymous, unsubstantiated complaints about a toxic and discriminatory workplace. Consistent with Board policies, MetroHealth took the appropriate steps to address these complaints and determined the complaints were unsubstantiated and meritless. Defendants deny Plaintiff's characterization that MetroHealth received "many" complaints. Defendants deny each and every remaining allegation contained in Paragraph 97.

98.     Defendants deny each and every allegation contained in Paragraph 98.

99.     Defendants admit that Board member Sharon Dumas acknowledged receipt of Plaintiff's concerns. MetroHealth acted promptly and appropriately in addressing what were

rendered as "meritless" concerns by Plaintiff. Defendants state that the July 2, 2024 text message referenced in Paragraph 99 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. Defendants deny each and every remaining allegation contained in Paragraph 99.

***Steed's FMLA Leave and MetroHealth's Continued Discrimination and Retaliation***

100.    Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

101.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's claim that she sought care for a serious medical condition and therefore deny the same. Defendants deny each and every remaining allegation contained in Paragraph 101.

102.    Defendants admit that MetroHealth approved Plaintiff for FMLA leave from July 19, 2024 through September 1, 2024, and that Plaintiff informed Dr. Walker of her intent to take such leave on July 22, 2024. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations of a "serious medical condition"; therefore, the allegations are denied. Defendants deny each and every remaining allegation contained in Paragraph 102.

103.    Defendants admit that MetroHealth approved Plaintiff's FMLA leave from July 19, 2024 through September 1, 2024. Defendants deny Plaintiff's claim that her termination was "unlawful." Further answering, Defendants state MetroHealth determined it was necessary to end the at-will employment relationship with Plaintiff after months of increasing performance issues, as reflected by, among other things: Plaintiff's March 2024 performance review that identified necessary improvement in three (3) of seven (7) performance areas; Plaintiff's failure to take any

action to implement or attempt to meet any of the recommendations contained in her performance review; Plaintiff's failure to provide any plans or strategies (quantifiable or otherwise) to address the financial challenges; Plaintiff's failure to respond to the Board and to provide required updates on a weekly or even bi-weekly basis; Plaintiff's failure to work with either a representative from The Governance Institute or an executive coach; Plaintiff's continued travel and attendance at conferences and speaking engagements without regard for the significant operational and financial challenges facing MetroHealth; the loss of over a dozen key members of the Senior Leadership Team since Plaintiff's arrival and the resulting instability of the Senior Leadership Team; and Plaintiff's lack of visibility on campus. Further answering, Defendants state that the July 25, 2024 press release referenced in Paragraph 96 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. Defendants deny each and every remaining allegation contained in Paragraph 103.

104.    Defendants admit that, during Plaintiff's FMLA leave, the Board elected to appoint Dr. Christine Alexander ("Dr. Alexander") to serve as Acting CEO. It is the Board's—and not Plaintiff's—responsibility to appoint any Acting CEO. Per Board policy, in the event of unplanned absences, "[t]he Board Chairperson shall, in consultation with the Executive Committee, evaluate the level and expected duration of the CEO's unavailability" and "shall assess the need for immediate appointment of an Acting CEO." Defendants deny each and every remaining allegation contained in Paragraph 104.

105.    Defendants deny each and every allegation contained in Paragraph 105.

106.    Defendants deny each and every allegation contained in Paragraph 106. Further answering, to the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and

the disclosure of any such communications is prohibited by Ohio law.

107.    Defendants admit that Allen Boseman purported to serve an overly broad, and ambiguous over 25-page public records request upon MetroHealth that was improper and not in compliance with Ohio law which Defendants objected to. Defendants aver that Allen Boseman ceased his representation of Plaintiff following this request and no subsequent records request was made by Plaintiff prior to the filing of this Complaint. On February 24, 2025, Defendants notified Plaintiff's counsel in writing as to the deficiencies in the public records request and invited Plaintiff's counsel to revise the requests. To date, Plaintiff and/or her counsel have not done so. Defendants deny each and every remaining allegation contained in Paragraph 107.

108.    Paragraph 108 states a legal conclusion to which no response is required. To the extent a response is required, Defendants admit MetroHealth is obligated to fulfill public record requests which comply with Ohio law, and deny each and every remaining allegation contained in Paragraph 108.

109.    Defendants admit that MetroHealth attempted to provide Plaintiff with notice that she was a "key employee" pursuant to 29 CFR 825.217 as is an appropriate practice with chief executives in such circumstances. Defendants deny that any such notice was improper, and further deny that Plaintiff's termination was pursuant to the "key employee" provisions of the FMLA. Defendants deny each and every remaining allegation contained in Paragraph 109. To the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law.

110.    Defendants are without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 110. To the extent a response is required, Defendants deny each

and every allegation contained in Paragraph 110.

111.    Defendants admit that MetroHealth did not respond to the public records request submitted by Sherman Boseman Legal Group due to an agreement with Allen Boseman to hold the request in abeyance. Further answering, Defendants state that MetroHealth has responded to a substantively identical request submitted by Plaintiff's current counsel, declining the request as written and asking counsel to revise its request due to its extraordinary overbreadth. Plaintiff's counsel remains welcome to revise their request to comply with applicable Ohio law. Defendants deny each and every remaining allegation contained in Paragraph 111.

112.    Defendants admit that on or about August 9, 2024, upon a unanimous vote of the Board, MetroHealth ended the at-will employment relationship with Plaintiff "without Cause" as that term is defined under Plaintiff's Employment Agreement. As is customary under executive employment agreements, the grounds under which Plaintiff could be terminated for "Cause" were limited to only certain specified circumstances expressly set forth in Plaintiff's Employment Agreement. The decision to exercise the Board's right to terminate Plaintiff's employment "without Cause" only meant that Plaintiff was entitled to up to two years of severance compensation and related benefits provided she abide by her own contractual obligations, including the execution of a separation agreement and release of claims. Plaintiff, however, elected not to execute the required separation agreement and receive these significant severance benefits. Defendants further state that the Board's vote to terminate Plaintiff's employment occurred in public session at an appropriately noticed special meeting of the Board, which Plaintiff and/or her representatives could have attended. Defendants deny that Plaintiff's termination was a result of Plaintiff engaging in protected activity or otherwise unlawful. MetroHealth did not end the at-will employment relationship for any discriminatory or retaliatory purpose, but, instead, because it had

become untenable because of Plaintiff's performance. Further answering, Defendants state that the letter referenced in Paragraph 112 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. Defendants deny each and every remaining allegation contained in Paragraph 112.

113. Defendants state that the letter referenced in Paragraph 113 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 113.

114. Defendants deny that Plaintiff's termination was a result of Plaintiff engaging in protected activity. MetroHealth did not end the at-will employment relationship for any discriminatory or retaliatory purpose. The employment relationship had become untenable because of Plaintiff's performance prior to her FMLA leave. Further, the Board appointed an Acting CEO while Plaintiff was on FMLA leave consistent with Board policy. Further answering, Defendants deny that Plaintiff's FMLA rights were interfered with. Defendants deny each and every remaining allegation contained in Paragraph 114.

115. Defendants deny each and every allegation contained in Paragraph 115. The decision by MetroHealth to end the at-will employment relationship with Plaintiff was a result of Plaintiff's performance and not for any retaliatory purpose.

116. Defendants deny that Plaintiff's termination was unlawful. Further answering, Defendants are without sufficient knowledge to admit or deny the remaining allegations contained in Paragraph 116; therefore, they are denied.

117. Defendants deny that Plaintiff's termination was unlawful. Defendants generally admit that there were privileged communications between MetroHealth and counsel. To the extent

Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law. Defendants are without sufficient knowledge to admit or deny any communications with County officials as alleged in Paragraph 117. Defendants deny each and every remaining allegation in Paragraph 117.

118.    Defendants deny each and every allegation contained in Paragraph 118.

119.    Defendants deny each and every allegation contained in Paragraph 119.

120.    Defendants deny each and every allegation contained in Paragraph 120.

121.     Defendants admit that anonymous complaints were submitted to MetroHealth. Further answering, MetroHealth, after conducting the appropriate legal investigation in accordance with MetroHealth policy, concluded that no evidence exists to substantiate these complaints. Defendants deny each and every remaining allegation contained in Paragraph 121.

122.    Defendants deny each and every allegation contained in Paragraph 122. Further answering, Defendants state that from her 360 Review, Plaintiff received a generally neutral rating from the Board and over one-third of Plaintiff's direct reports rated Plaintiff as needing improvement on almost all criteria.

123.    Defendants admit that at the time MetroHealth hired Plaintiff, MetroHealth believed she was qualified for the CEO role and offered her the position. Further answering, Defendants state that, over the course of Plaintiff's tenure, it became apparent that she failed to meet the reasonable expectations of MetroHealth, and, thus, her at-will employment was lawfully terminated. Defendants deny each and every remaining allegation contained in Paragraph 123.

124.    Defendants deny each and every allegation contained in Paragraph 124.

125.    Defendants deny each and every allegation contained in Paragraph 125. Further

answering, Defendants state that the Board exercised its authority to limit Plaintiff's proposed reviewers, while still accepting some of her requests. Plaintiff requested that the individuals which she had been instrumental to bringing to MetroHealth review her, including one individual that was not a direct report to Plaintiff and had started to work for MetroHealth two weeks prior to the end of 2023 – the performance year under review. At Plaintiff's request, MetroHealth permitted several individuals with limited knowledge of Plaintiff's performance to participate in the review process, including Chief Financial Officer Derrick Hollings and Chief People Officer Dalph Watson, who were respectively hired in September and June of the year under review.

126.    Defendants deny each and every allegation contained in Paragraph 126.

127.    Defendants deny each and every allegation contained in Paragraph 127.

128.    Defendants deny each and every allegation contained in Paragraph 128. Further answering, Defendants state that at no time did the General Counsels, Defendants McBride or Rajki, discriminate against Plaintiff. To the contrary, the General Counsels participated in the final stage of Plaintiff's selection process by sitting on the Executive Panel and substantially assisted Plaintiff into transitioning into her role and in Plaintiff's regular meetings with the General Counsels she provided positive feedback on their performance. Plaintiff's relationship with the General Counsels seemingly degraded only after their necessary counsel about which Plaintiff was unhappy—including matters of Ohio Ethics Laws and concerns regarding the Plaintiff's conduct and performance that were brought to the Board in accordance with MetroHealth policy and their professional ethical duties. Defendants McBride and Rajki ultimately proposed, in February 2024, to separate from MetroHealth after Plaintiff emailed the General Counsels, cc'ing Board Chair Dr. Walker and then-Vice Chair Vanessa Whiting admonishing them for insubordination in communicating with the Board. She further instructed the General Counsels that they were not to

communicate with the Board without going through her first. At this point, it had become clear to the General Counsels that, despite the Board's encouragement to remain in the role, due to Plaintiff's misguided view of the role of legal counsel, their service in the role was untenable. As a result, the General Counsels submitted a request to separate from MetroHealth. During negotiations of the separation agreements, Plaintiff never raised any performance issues nor any allegations of discrimination or hostile work environment. Plaintiff herself wrote to the Board Chair and Vice Chair that the separation of the General Counsels was not for performance reasons. Indeed, although the General Counsels proposed to depart as of May 2024, Plaintiff requested that the General Counsels stay until as late as August to provide for a transition to the next CLO. Rajki agreed to stay until June 2024, and McBride agreed to stay until August 2024. At Plaintiff's direction, Watson executed a written separation agreement with the General Counsels in March 2024. The separation agreements included a complete release of any claims against the General Counsels, which Plaintiff agreed to on behalf of MetroHealth. It was over three months later that, to Defendants knowledge, Plaintiff raised for the first time vague allegations of discrimination and hostile work environment against the General Counsels.

129.    Defendants admit that Plaintiff raised concerns of a hostile work environment and race and sex discrimination on July 16, 2024. Defendants deny that Plaintiff's concerns were not appropriately investigated in accordance with MetroHealth policies. Consistent with MetroHealth policies, MetroHealth determined that her concerns were unsubstantiated. To the contrary, it would appear that Plaintiff, aware of MetroHealth's ongoing concerns with Plaintiff's performance, raised her concerns of a toxic work environment and race and sex discrimination in an effort to establish this claim. Plaintiff did not raise these claims when General Counsels were employed and/or during the negotiations for their separation agreements. Instead, she consistently gave

General Counsels positive feedback on their performance and requested they remain employed longer than their requested departure dates. Defendants deny each and every remaining allegation contained in Paragraph 129.

130.    Defendants admit the allegations contained in Paragraph 130.

131.    Defendants deny each and every allegation contained in Paragraph 131.

132.    Defendants deny each and every allegation contained in Paragraph 132.

133.    Defendants deny each and every allegation contained in Paragraph 133.

134.    Defendants admit that Plaintiff filed a Charge with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission, Charge No. 22A-2025-00605/ OCRC Case No. CLEB4(010743), but deny that they engaged in discriminatory conduct or that a hostile work environment existed at MetroHealth.

135.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 135; therefore, the allegations are denied.

136.    Defendants admit that MetroHealth received notice from the EEOC that Plaintiff had been issued a Right to Sue letter on March 24, 2025. Defendants state that the document referenced as Exhibit A in Paragraph 136 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 136.

137.    Defendants state that the document referenced as Exhibit B in Paragraph 137 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 137.

138.     MetroHealth avers that it submitted a Position Statement to the EEOC. Defendants deny each and every remaining allegation contained in Paragraph 138.

139.     Defendants admit that MetroHealth ended the at-will employment relationships with Chief People & Administrative Officer Dalph Watson, Chief Operating Officer Olusegun Ishmael, and Vice President, Local Government Relations Adam Winston in 2024 – all of whom have executed mutual separation agreements. Defendants deny replacing the Chief People & Administrative Officer and Vice President, Local Government Relations roles; these were new roles created by Plaintiff. Defendants further deny "terminat[ing]" Marlon Primes, as Primes was not an employee of MetroHealth, but rather provided services as a contractor at an hourly rate through an engagement agreement between MetroHealth and Primes's law firm, Brennan, Manna & Diamond, LLC. MetroHealth denies that any at-will employee was terminated for an improper purpose. Defendants deny each and every remaining allegation contained in Paragraph 139.

140.     Defendants state that Plaintiff's Employment Agreement referenced in Paragraph 140 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with the Employment Agreement. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 140.

141.     Defendants deny each and every allegation contained in Paragraph 141.

142.     Defendants state that the statement referenced in Paragraph 142 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. Defendants deny each and every remaining allegation contained in Paragraph 142.

143.     Defendants state that the Determination of Benefit Payment Eligibility referenced in Paragraph 143 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. To the extent further response is required, Defendants deny each and every

remaining allegation contained in Paragraph 143.

144.    Defendants state that the June 25, 2024 press release referenced in Paragraph 144 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. Further answering, it was Plaintiff—not the Board or any other employee—that reviewed and had final approval of the June 25, 2024 press release quoted in Paragraph 144. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 144.

145.    Defendants state that the March 27, 2024 Cleveland.com statement referenced in Paragraph 145 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 145.

146.    Defendants deny each and every allegation contained in Paragraph 146.

147.    Defendants state that the statement in SignalCleveland referenced in Paragraph 147 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with such document. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 147.

148.    Paragraph 148 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 148. During Plaintiff's one on one meetings, Defendant Walker and Defendant Moss raised the performance issues of Plaintiff and offered recommendations for Plaintiff, including recommending that she work with a representative from The Governance Institute or an executive coach. Further answering, Defendants state that five (5) of the nine (9) Board members who voted in favor of ending the at-will relationship with Plaintiff were on the Board at the time Plaintiff was

hired.

149.    Defendants deny each and every allegation contained in Paragraph 149.

150.    Defendants admit that MetroHealth ended the at-will employment relationship with Plaintiff. Defendants further admit that on July 26, 2024, while Plaintiff was on FMLA leave, acting under MetroHealth policy, the Board appointed Dr. Alexander to serve as Acting CEO effective immediately. Subsequent to ending the at-will relationship with Plaintiff, Dr. Alexander became MetroHealth's CEO. Defendants deny each and every remaining allegation contained in Paragraph 150.

151.    Defendants admit that MetroHealth ended the at-will relationship while Plaintiff was on FMLA leave. Defendants deny each and every remaining allegation contained in Paragraph 151.

152.    Paragraph 152 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 152.

153.    Defendants state that Plaintiff's Employment Agreement referenced in Paragraph 153 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with the Employment Agreement. Further answering, Section 11(E) of the Employment Agreement plainly *does not* pertain to a termination "without Cause," and has no relevance to Plaintiff's separation. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 153.

154.    Defendants state that Plaintiff's Employment Agreement referenced in Paragraph 154 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with the Employment Agreement. To the extent further response is required, Defendants deny each and

every remaining allegation contained in Paragraph 154.

155.     Defendants deny each and every allegation contained in Paragraph 155.

156.     Defendants aver that MetroHealth made a payment to Plaintiff in March of 2025. Defendants deny each and every remaining allegation contained in Paragraph 156.

157.     Defendants deny each and every allegation contained in Paragraph 157.

158.     Defendants state that Plaintiff's Employment Agreement referenced in Paragraph 158 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent with the Employment Agreement. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 158.

159.     Defendants deny each and every allegation contained in Paragraph 159.

160.     Defendants deny each and every allegation contained in Paragraph 160.

161.     Paragraph 161 states a legal conclusion to which no response is required. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 161.

### COUNT I – Breach of Employment Agreement – Good Faith and Fair Dealing
### (As to Defendant MetroHealth)

162.     Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

163.     Defendants deny each and every allegation contained in Paragraph 163.

164.     Defendants deny each and every allegation contained in Paragraph 164.

165.     Defendants deny each and every allegation contained in Paragraph 165.

166.     Defendants deny each and every allegation contained in Paragraph 166.

167.     Defendants deny each and every allegation contained in Paragraph 167.

168.     Defendants deny each and every allegation contained in Paragraph 168.

169.    Defendants deny each and every allegation contained in Paragraph 169.

**COUNT II – Whistleblower Retaliation in Violation of R.C. 4113.52**
**(As to Defendant MetroHealth)**

170.    Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

171.    Defendants deny each and every allegation contained in Paragraph 171.

172.    Defendants deny each and every allegation contained in Paragraph 172.

173.    Defendants deny each and every allegation contained in Paragraph 173.

174.    Defendants deny each and every allegation contained in Paragraph 174.

175.    Defendants deny each and every allegation contained in Paragraph 175.

176.    Defendants deny each and every allegation contained in Paragraph 176 and deny any violation of R.C. 4113.52.

177.    Defendants deny each and every allegation contained in Paragraph 177.

178.    Defendants deny each and every allegation contained in Paragraph 178.

179.    Defendants deny each and every allegation contained in Paragraph 179.

**COUNT III – FMLA Retaliation**
**(As to Defendant MetroHealth)**

180.    Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

181.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 181. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 181.

182.    Defendants state that Paragraph 182 calls for a legal conclusion to which no response is required. Defendants admit that Plaintiff was approved for FMLA leave from July 19,

2024 through September 1, 2024 and deny each and every remaining allegation contained in Paragraph 182.

183.    Defendants admit that Plaintiff was approved for FMLA leave from July 19, 2024 through September 1, 2024 and further state that any press releases speak for themselves. Defendants deny each and every remaining allegation contained in Paragraph 183.

184.    Defendants admit that MetroHealth attempted to provide Plaintiff with notice that she was a "key employee" pursuant to 29 CFR 825.217 as is an appropriate practice with chief executives in such circumstances. Defendants deny that any such notice was improper, and further deny that Plaintiff's termination was pursuant to the "key employee" provisions of the FMLA. Defendants further answer that to the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law. Defendants deny each and every remaining allegation contained in Paragraph 184.

185.    Defendants admit the allegations contained in Paragraph 185.

186.    Defendants admit that on August 9, 2024 the MetroHealth Board voted unanimously to terminate the employment of Plaintiff. Defendants deny each and every remaining allegation contained in Paragraph 186.

187.    Defendants deny each and every allegation contained in Paragraph 187.

188.    Defendants deny each and every allegation contained in Paragraph 188.

189.    Defendants deny each and every allegation contained in Paragraph 189.

190.    Defendants deny each and every allegation contained in Paragraph 190.

191.    Defendants deny each and every allegation contained in Paragraph 191.

192.    Defendants deny each and every allegation contained in Paragraph 192.

193.    Defendants deny each and every allegation contained in Paragraph 193.

**COUNT IV – Wrongful Discharge in Violation of Public Policy**
**(As to Defendant MetroHealth)**

194.    Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein. Defendants filed a Motion to Dismiss Count IV on May 7, 2025.

195.    Defendants filed a Motion to Dismiss Count IV on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 195.

196.    Defendants filed a Motion to Dismiss Count IV on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 196.

197.    Defendants filed a Motion to Dismiss Count IV on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 197.

198.    Defendants filed a Motion to Dismiss Count IV on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 198.

199.    Defendants filed a Motion to Dismiss Count IV on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 199.

200.    Defendants filed a Motion to Dismiss Count IV on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 200.

201.    Defendants filed a Motion to Dismiss Count IV on May 7, 2025. To the extent this

Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 201.

### COUNT V – Defamation
### (As to Defendants MetroHealth, Rose, McBride, Rajki, Partington, Barre, Dr. Walker, and Moss)

202.    Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein. Defendants filed a Motion to Dismiss Count V on May 7, 2025.

203.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 203.

204.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 204.

205.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 205.

206.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 206.

207.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 207.

208.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation

contained in Paragraph 208.

209.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 209.

210.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 210.

211.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 211.

212.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 212.

213.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 213.

214.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 214.

215.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 215.

216.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this

Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 216.

217.     Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 217.

218.     Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 218.

219.     Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 219.

220.     Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 220.

221.     Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 221.

222.     Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 222.

223.     Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 223.

224.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 224.

225.    Defendants filed a Motion to Dismiss Count V on May 7, 2025. To the extent this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 225.

### COUNT VI – FMLA Interference
### (As to Defendant MetroHealth)

226.    Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

227.    Defendants are without knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 227. To the extent a response is required, Defendants deny each and every allegation contained in Paragraph 227.

228.    Defendants state that Paragraph 228 calls for a legal conclusion to which no response is required. Defendants admit that Plaintiff was approved for FMLA leave from July 19, 2024 through September 1, 2024 and deny each and every remaining allegation contained in Paragraph 228.

229.    Defendants admit that Plaintiff was approved for FMLA leave from July 19, 2024 through September 1, 2024 and further state that any press releases speak for themselves. Defendants deny each and every remaining allegation contained in Paragraph 229.

230.    Defendants admit that MetroHealth attempted to provide Plaintiff with notice that she was a "key employee" pursuant to 29 CFR 825.217 as is an appropriate practice with chief executives in such circumstances. Defendants deny that any such notice was improper, and further deny that Plaintiff's termination was pursuant to the "key employee" provisions of the FMLA.

Defendants further answer that to the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law. Defendants deny each and every remaining allegation contained in Paragraph 230.

231.    Defendants admit the allegations contained in Paragraph 231.

232.    Defendants admit that on August 9, 2024 the MetroHealth Board voted unanimously to terminate the employment of Plaintiff. Defendants deny each and every remaining allegation contained in Paragraph 232.

233.    Defendants admit the allegations contained in Paragraph 233.

234.    Defendants deny each and every allegation contained in Paragraph 234.

235.    Defendants deny each and every allegation contained in Paragraph 235.

236.    Defendants deny each and every allegation contained in Paragraph 236.

237.    Defendants deny each and every allegation contained in Paragraph 237.

### COUNT VII – Racial Discrimination – R.C. 4112
### (As to Defendant MetroHealth)

238.    Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

239.    Defendants deny each and every allegation contained in Paragraph 239.

240.    Defendants deny each and every allegation contained in Paragraph 240.

241.    Defendants deny each and every allegation contained in Paragraph 241.

242.    Defendants deny each and every allegation contained in Paragraph 242.

243.    Defendants deny each and every allegation contained in Paragraph 243.

244.    Defendants answer that any alleged anonymous written complaints speak for themselves, deny that any such alleged complaints are substantiated, and deny any and all

remaining allegations contained in Paragraph 244.

245. Defendants answer that any alleged anonymous written complaints speak for themselves, deny that any such alleged complaints are substantiated, and deny any and all remaining allegations contained in Paragraph 245.

246. Defendants deny each and every allegation contained in Paragraph 246.

247. Defendants admit that at the time MetroHealth hired Plaintiff, MetroHealth believed she was qualified for the CEO role and offered her the position. Further answering, Defendants state that, over the course of Plaintiff's tenure, it became apparent that she did not meet the reasonable expectations of MetroHealth, and, thus, her at-will employment was lawfully terminated. Defendants deny each and every remaining allegation contained in Paragraph 247.

248. Defendants deny each and every allegation contained in Paragraph 248.

249. Defendants deny each and every allegation contained in Paragraph 249. Further answering, Defendants state that the Board exercised its authority to limit Plaintiff's proposed reviewers, while still accepting some of her requests. Plaintiff requested that the individuals which she had been instrumental to bringing to MetroHealth review her, including one individual that was not a direct report to Plaintiff and had started to work for MetroHealth two weeks prior to the end of 2023 – the performance year under review. At Plaintiff's request, MetroHealth permitted several individuals with limited knowledge of Plaintiff's performance to participate in the review process, including Chief Financial Officer Derrick Hollings and Chief People Officer Dalph Watson, who were respectively hired in September and June of the year under review.

250. Defendants deny each and every allegation contained in Paragraph 250.

251. Defendants deny each and every allegation contained in Paragraph 251.

252. Defendants deny each and every allegation contained in Paragraph 252. Further

answering, Defendants state that at no time did the General Counsels, Defendants McBride or Rajki, discriminate against Plaintiff. To the contrary, the General Counsels participated in the final stage of Plaintiff's selection process by sitting on the Executive Panel and substantially assisted Plaintiff into transitioning into her role and in Plaintiff's regular meetings with the General Counsels she provided positive feedback on their performance. Plaintiff's relationship with the General Counsels seemingly degraded only after their necessary counsel about which Plaintiff was unhappy—including matters of Ohio Ethics Laws and concerns regarding the Plaintiff's conduct and performance that were brought to the Board in accordance with MetroHealth policy and their professional ethical duties. Defendants McBride and Rajki ultimately proposed, in February 2024, to separate from MetroHealth after Plaintiff emailed the General Counsels, cc'ing Board Chair Dr. Walker and then-Vice Chair Vanessa Whiting admonishing them for insubordination in communicating with the Board. She further instructed the General Counsels that they were not to communicate with the Board without going through her first. At this point, it had become clear to the General Counsels that, despite the Board's encouragement to remain in the role, due to Plaintiff's misguided view of the role of legal counsel, their service in the role was untenable. As a result, the General Counsels submitted a request to separate from MetroHealth. During negotiations of the separation agreements, Plaintiff never raised any performance issues nor any allegations of discrimination or hostile work environment. Plaintiff herself wrote to the Board Chair and Vice Chair that the separation of the General Counsels was not for performance reasons. Indeed, although the General Counsels proposed to depart as of May 2024, Plaintiff requested that the General Counsels stay until as late as August to provide for a transition to the next CLO. Rajki agreed to stay until June 2024, and McBride agreed to stay until August 2024. At Plaintiff's direction, Watson executed a written separation agreement with the General Counsels in March

2024. The separation agreements included a complete release of any claims against the General Counsels, which Plaintiff agreed to on behalf of MetroHealth. It was over three months later that, to Defendants knowledge, Plaintiff raised for the first time vague allegations of discrimination and hostile work environment against the General Counsels.

253.    Defendants deny each and every allegation contained in Paragraph 253. Defendants admit that Plaintiff raised concerns of a hostile work environment and race and sex discrimination on July 16, 2024. Defendants deny that Plaintiff's concerns were not appropriately investigated in accordance with MetroHealth policies. Consistent with MetroHealth policies, MetroHealth determined that her concerns were unsubstantiated. To the contrary, it would appear that Plaintiff, aware of MetroHealth's ongoing concerns with Plaintiff's performance, raised her concerns of a toxic work environment and race and sex discrimination in an effort to establish this claim. Plaintiff did not raise these claims when General Counsels were employed and/or during the negotiations for their separation agreements. Instead, she consistently gave General Counsels positive feedback on their performance and requested they remain employed longer than their requested departure dates. Defendants deny each and every remaining allegation contained in Paragraph 253.

254.    Defendants admit that MetroHealth ended the at-will employment relationship with Plaintiff. Defendants further admit that on July 26, 2024, while Plaintiff was on FMLA leave, acting under MetroHealth policy, the Board appointed Dr. Alexander to serve as Acting CEO effective immediately. Subsequent to ending the at-will relationship with Plaintiff, Dr. Alexander became MetroHealth's CEO. Defendants deny each and every remaining allegation contained in Paragraph 254.

255.    Defendants admit that MetroHealth ended the at-will relationship while Plaintiff was on FMLA leave. Defendants deny each and every remaining allegation contained in Paragraph

255.

256.     Defendants deny each and every allegation contained in Paragraph 256.

257.     Defendants deny each and every allegation contained in Paragraph 257.

258.     Defendants deny each and every allegation contained in Paragraph 258.

259.     Defendants deny each and every allegation contained in Paragraph 259.

260.     Defendants state that the document referenced as Exhibit A and B in Paragraph 260 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 260.

261.     Defendants deny each and every allegation contained in Paragraph 261.

**COUNT VIII – Racial Discrimination – Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. 2000e**
**(As to Defendant MetroHealth)**

262.     Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein.

263.     Defendants deny each and every allegation contained in Paragraph 263.

264.     Defendants deny each and every allegation contained in Paragraph 264.

265.     Defendants deny each and every allegation contained in Paragraph 265.

266.     Defendants deny each and every allegation contained in Paragraph 266.

267.     Defendants deny each and every allegation contained in Paragraph 267.

268.     Defendants answer that any alleged anonymous written complaints speak for themselves, deny that any such alleged complaints are substantiated, and deny any and all remaining allegations contained in Paragraph 268.

269.     Defendants answer that any alleged anonymous written complaints speak for

themselves, deny that any such alleged complaints are substantiated, and deny any and all remaining allegations contained in Paragraph 269.

270.    Defendants admit that at the time MetroHealth hired Plaintiff, MetroHealth believed she was qualified for the CEO role and offered her the position. Further answering, Defendants state that, over the course of Plaintiff's tenure, it became apparent that she did not meet the reasonable expectations of MetroHealth, and, thus, her at-will employment was lawfully terminated. Defendants deny each and every remaining allegation contained in Paragraph 270.

271.    Defendants deny each and every allegation contained in Paragraph 271.

272.    Defendants deny each and every allegation contained in Paragraph 272.

273.    Defendants deny each and every allegation contained in Paragraph 273.

274.    Defendants deny each and every allegation contained in Paragraph 274.

275.    Defendants deny each and every allegation contained in Paragraph 275. Further answering, Defendants state that at no time did the General Counsels, Defendants McBride or Rajki, discriminate against Plaintiff. To the contrary, the General Counsels participated in the final stage of Plaintiff's selection process by sitting on the Executive Panel and substantially assisted Plaintiff into transitioning into her role and in Plaintiff's regular meetings with the General Counsels she provided positive feedback on their performance. Plaintiff's relationship with the General Counsels seemingly degraded only after their necessary counsel about which Plaintiff was unhappy—including matters of Ohio Ethics Laws and concerns regarding the Plaintiff's conduct and performance that were brought to the Board in accordance with MetroHealth policy and their professional ethical duties. Defendants McBride and Rajki ultimately proposed, in February 2024, to separate from MetroHealth after Plaintiff emailed the General Counsels, cc'ing Board Chair Dr. Walker and then-Vice Chair Vanessa Whiting admonishing them for insubordination in

communicating with the Board. She further instructed the General Counsels that they were not to communicate with the Board without going through her first. At this point, it had become clear to the General Counsels that, despite the Board's encouragement to remain in the role, due to Plaintiff's misguided view of the role of legal counsel, their service in the role was untenable. As a result, the General Counsels submitted a request to separate from MetroHealth. During negotiations of the separation agreements, Plaintiff never raised any performance issues nor any allegations of discrimination or hostile work environment. Plaintiff herself wrote to the Board Chair and Vice Chair that the separation of the General Counsels was not for performance reasons. Indeed, although the General Counsels proposed to depart as of May 2024, Plaintiff requested that the General Counsels stay until as late as August to provide for a transition to the next CLO. Rajki agreed to stay until June 2024, and McBride agreed to stay until August 2024. At Plaintiff's direction, Watson executed a written separation agreement with the General Counsels in March 2024. The separation agreements included a complete release of any claims against the General Counsels, which Plaintiff agreed to on behalf of MetroHealth. It was over three months later that, to Defendants knowledge, Plaintiff raised for the first time vague allegations of discrimination and hostile work environment against the General Counsels.

276.    Defendants state that the written complaint referenced in Paragraph 276 speaks for itself and deny any inconsistencies therewith. Defendants admit that Plaintiff raised concerns of a hostile work environment and race and sex discrimination on July 16, 2024. Defendants deny each and every remaining allegation contained in Paragraph 276. Defendants deny that Plaintiff's concerns were not appropriately investigated in accordance with MetroHealth policies. Consistent with MetroHealth policies, MetroHealth determined that her concerns were unsubstantiated. To the contrary, it would appear that Plaintiff, aware of MetroHealth's ongoing concerns with

Plaintiff's performance, raised her concerns of a toxic work environment and race and sex discrimination in an effort to establish this claim. Plaintiff did not raise these claims when General Counsels were employed and/or during the negotiations for their separation agreements. Instead, she consistently gave General Counsels positive feedback on their performance and requested they remain employed longer than their requested departure dates. Defendants deny each and every remaining allegation contained in Paragraph 276.

277.    Defendants admit that Plaintiff, as an African American, is a member of a protected class. Defendants deny each and every remaining allegation contained in Paragraph 277.

278.    Defendants deny each and every allegation contained in Paragraph 278.

279.    Defendants deny each and every allegation contained in Paragraph 279.

280.    Defendants admit that Plaintiff's at-will employment was terminated by MetroHealth. Defendants deny each and every remaining allegation contained in Paragraph 280.

281.    Defendants deny each and every allegation contained in Paragraph 281.

282.    Defendants state that the Charge referenced in Paragraph 282 speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 282.

283.    Defendants state that the documents referenced as Exhibit A and B in Paragraph 283 speak for themselves and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 283.

284.    Defendants deny each and every allegation contained in Paragraph 284.

### Count IX – Hostile Work Environment
### (As to Defendants MetroHealth, Rose, McBride, Rajki, Partington, and Barre)

285.    Defendants reincorporate all preceding paragraphs of this Answer as if fully

restated herein. Defendants filed a Motion to Dismiss Count IX on May 7, 2025.

286.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 286.

287.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 287.

288.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 288.

289.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 289.

290.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 290.

291.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 291.

292.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 292.

293.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that

this Count is not dismissed and a response is required, Defendants answer that any alleged anonymous written complaints speak for themselves, deny that any such alleged complaints are substantiated, and deny any and all remaining allegations contained in Paragraph 293.

294.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants answer that any alleged anonymous written complaints speak for themselves, deny that any such alleged complaints are substantiated, and deny any and all remaining allegations contained in Paragraph 294.

295.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 295.

296.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 296.

297.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 297.

298.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 298.

299.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 299.

300.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that

this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 300.

301.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 301.

302.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 302.

303.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants admit the allegations contained in Paragraph 303.

304.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 304.

305.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 305.

306.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 306.

307.    Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants state that the documents referenced as Exhibit A and B in Paragraph 307 speak for themselves and deny any allegations in

Plaintiff's Complaint inconsistent therewith. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 307.

308.     Defendants filed a Motion to Dismiss Count IX on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants state that the documents referenced as Exhibit A and B in Paragraph 308 speak for themselves and deny any allegations in Plaintiff's Complaint inconsistent therewith. To the extent further response is required, Defendants deny each and every remaining allegation contained in Paragraph 308.

309.     Defendants deny each and every allegation contained in Paragraph 309.

**COUNT X – Invasion of Privacy**
**(As to Defendant MetroHealth)**

310.     Defendants reincorporate all preceding paragraphs of this Answer as if fully restated herein. Defendants filed a Motion to Dismiss Count X on May 7, 2025.

311.     Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 311.

312.     Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, and to the extent Plaintiff is referencing any communication covered by MetroHealth's attorney-client privilege, Defendants aver that Plaintiff has no ability to waive this privilege and the disclosure of any such communications is prohibited by Ohio law. Further answering, Defendants state that the EEOC Position Statement speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. Defendants deny each and every remaining allegation contained in Paragraph 312.

313.     Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Paragraph 313 states conclusions to which

no response is required. To the extent a response is required, Defendants admit that it is in possession of the EEOC Position Statement and further state that the EEOC Position Statement speaks for itself and deny any allegations in Plaintiff's Complaint inconsistent therewith. Defendants deny each and every allegation contained in Paragraph 313.

314.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants admit that MetroHealth is a covered entity under HIPAA, but further state that records relating to Dr. Steed's request for leave under the FMLA are records received by MetroHealth in its capacity as an employer and that such records are not covered by the HIPAA Privacy Rule, and deny each and every allegation contained in Paragraph 314.

315.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 315.

316.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 316.

317.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 317.

318.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 318.

319.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that

this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 319.

320.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 320.

321.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 321.

322.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 322.

323.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 323.

324.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 324.

325.    Defendants filed a Motion to Dismiss Count X on May 7, 2025. To the extent that this Count is not dismissed and a response is required, Defendants deny each and every allegation contained in Paragraph 325.

Defendants deny each and every allegation in the Complaint not expressly admitted in this Answer, including the allegations set forth in the WHEREFORE Paragraph of the Complaint, and denies that Plaintiff is entitled to relief of any kind.

## ADDITIONAL DEFENSES

1.  The Complaint, and each purported claim contained therein, fails to state a claim upon which relief can be granted.

2.  The Complaint, and each purported claim contained therein, is barred in whole or in part, because all decisions with respect to Plaintiff's employment were made by MetroHealth for legitimate, non-discriminatory, non-retaliatory, and non-pretextual reasons.

3.  MetroHealth did not commit the acts or omissions as alleged in the Complaint for discriminatory or retaliatory motives, but even if it did, such acts or omissions would have been taken in any event for legitimate, non-discriminatory, non-retaliatory, and non-pretextual reasons.

4.  The existence of the binding Employment Agreement between Plaintiff and MetroHealth bars, in whole or in part, Plaintiff's claims.

5.  Plaintiff is estopped from pursuing the claims in the Complaint, and each purported claim contained therein, by reason of the Plaintiff's own actions and course of conduct.

6.  Plaintiff has waived the right, if any, to pursue the claims in the Complaint, and each purported claim contained therein, by reason of her own actions and course of conduct.

7.  The Complaint, and each purported claim contained therein, is barred by the doctrine of laches.

8.  The Complaint, and each purported claim contained therein, is barred by the doctrines of waiver and estoppel.

9.  The Complaint, and each purported claim contained therein, is barred by the doctrine of unclean hands.

10.  The Complaint, and each purported claim therein, is barred, in whole or in part, because MetroHealth exercised reasonable care to prevent and correct promptly any alleged

discriminatory and/or retaliatory behavior.

11.     The Complaint, and each purported claim therein, is barred, in whole or in part, because Plaintiff failed to take advantage of any preventive or corrective opportunities provided by MetroHealth to avoid harm or otherwise.

12.     Plaintiff's claims for damages (and certain categories of damages, and the amounts thereof recoverable) are limited by the applicable limit(s) on statutory damages.

13.     The Complaint, and each and every purported claim alleged therein, is barred because Plaintiff has failed to mitigate or reasonably attempt to mitigate her damages, if any, as required by law.

14.     MetroHealth affirmatively states that it cannot otherwise be liable for punitive damages or attorneys' fees because it has not engaged in any discriminatory or retaliatory practices with malice or reckless indifference and has not engaged in unlawful intentional discrimination or retaliation.

15.     The Complaint, and each and every purported claim alleged therein, is barred because any recovery from Defendants would result in Plaintiff's unjust enrichment.

16.     Plaintiff is not entitled to receive punitive damages because MetroHealth has made good faith efforts to prevent discrimination in its workplace.

17.     Plaintiff is barred from recovering punitive damages because MetroHealth had in place a policy to prevent discrimination and retaliation in its workplace and made good faith efforts to implement and enforce that policy.

18.     Plaintiff is not entitled to receive punitive damages because, even if she was able to establish that any individual allowed unlawful bias to affect any employment decision, which Defendants expressly deny, MetroHealth, in light of its good faith efforts to prevent bias, is not

liable for punitive damages based on any such individual decision.

19.     Plaintiff's claims for punitive damages are barred or must be reduced on account of Ohio Rev. Code Section 2315.21.

20.     Plaintiff's claims for damages are barred or must be reduced on account of Ohio Rev. Code Sections 2315.18, 2315.20, 2315.21, and Chapter 2744.05(A).

21.     Plaintiff is not entitled to punitive damages or attorneys' fees and costs, and Plaintiff's prayers for such relief should be stricken.

22.     Defendants reserve the right to seek recovery of fees and costs, including attorneys' fees, for Plaintiff's frivolous conduct under Ohio Rev. Code Section 2323.51.

23.     Plaintiff's retaliation claims fail as a matter of law because Plaintiff did not suffer any retaliation.

24.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations or contractual limitations.

25.     Plaintiff's claims, in whole or in part, are limited or barred because Defendants exercised reasonable care to examine and assess the alleged dispute.

26.     Plaintiff's defamation claim fails as a matter of law because all the alleged defamatory statements were truthful.

27.     Plaintiff's defamation claim fails as a matter of law because all the alleged defamatory statements were not statements of fact.

28.     Plaintiff's defamation claim fails as a matter of law because all the alleged defamatory statements are entitled to privilege and/or Defendants' actions are protected by a qualified privilege.

29.     Defendants are entitled to all available common law and statutory immunities,

including but not limited to, those provided pursuant to Ohio Rev. Code Chapter 2744.

30.     Plaintiff's claims, in whole are in part, are barred because Plaintiff is in violation of Ohio Rev. Code Section 102.03(B) for disclosing MetroHealth's sensitive and confidential information acquired during her official duties while employed by MetroHealth, including but not limited to proprietary information and internal reports.

31.     Defendants reserve the right to amend their Answer to conform to information learned through discovery and to assert and plead additional defenses that may become known or available throughout discovery and the remainder of these proceedings.

### PRAYER FOR RELIEF

WHEREFORE, having fully answered Plaintiff's Complaint, Defendants deny that Plaintiff is entitled to any of the relief sought in Plaintiff's Complaint and pray for the following relief:

1.     That Plaintiff's Complaint be dismissed, with prejudice, or alternatively, for judgment in Defendants' favor on the merits;

2.     That Defendants be reimbursed its reasonable costs, including attorneys' fees, incurred in defending this action, to the extent permitted by law; and

3.     Any and all other relief in law or equity to which Defendants may be entitled.

### JURY DEMAND

Defendants hereby demand a trial by jury on all issues, claims, actions, and defenses so triable.

## COUNTERCLAIM ON BEHALF OF DEFENDANT, METROHEALTH

MetroHealth submits the following counterclaims against Dr. Steed:

## BACKGROUND

1.     On or about September 21, 2022, Dr. Steed entered into an Employment Agreement with MetroHealth effective January 1, 2023.

2.     Due to the early termination of Dr. Steed's predecessor, Dr. Boutros, Dr. Steed began her role as CEO at MetroHealth on or about December 5, 2022.

3.     Due to increasing performance issues, the Board unanimously voted to end the at-will employment relationship with Dr. Steed on August 9, 2024.

4.     Immediately following the August 9, 2024 Board meeting, Dr. Walker informed Dr. Steed of the Board's vote to end the at-will employment relationship.

5.     Despite numerous requests, Dr. Steed has failed to return all MetroHealth property in her possession, including MetroHealth computers, phones, tablets, and records contained therein, and all other MetroHealth property in her possession, including trade-secret or attorney-client confidential communications that was provided to her during her tenure as an at-will employee.

6.     Since Dr. Steed's termination, she has continued to issue defamatory statements regarding MetroHealth, its Board, and employees.

7.     Dr. Steed has on multiple occasions and to multiple outlets, alleged that MetroHealth, its legal and compliance departments, and/or its Board, intentionally and wrongfully deleted emails relating to the investigation of Dr. Boutros' conduct, discriminated against her, and retaliated against her.

8.     Dr. Steed's continued assertion of nefarious or unethical conduct by the MetroHealth Board and MetroHealth employees is far beyond hyperbole or ordinary litigation

posturing.

***False statements regarding the deletion of MetroHealth emails and records***

9.      In a written statement to the media, Dr. Steed declared that "[s]hortly after she became CEO, Dr. Steed learned that years of MetroHealth documents were deleted from MetroHealth records at the instruction of MetroHealth's general counsel."

10.      In an interview with WKYC, Dr. Steed stated that "years' worth of emails . . . [and] entire hard drives of our Chief Financial Officer was missing." *See* https://www.wkyc.com/article/news/health/fired-metrohealth-ceo-airica-steed-alleges-corruption-discrimination-first-interview-since-suing-hospital-3news-exclusive/95-01006c61-e132-4aa3-b9af-f6afc5d592bd.

11.      In Dr. Steed's statement to the media, she grossly mischaracterizes an internal audit risk assessment summary prepared by MetroHealth's third-party internal audit provider, E&Y, stating that E&Y made "findings" "regarding governance practices, missing public records, and ethical violations within MetroHealth."

12.      Dr. Steed purported to disclose information regarding E&Y's internal audit services for MetroHealth with the public, including with news and media outlets; some of those purported disclosures are false.

13.      E&Y specifically stated in their risk assessment summary that these allegations were not validated by E&Y.

14.      Dr. Steed was unable to substantiate her claims that emails and records were improperly deleted and/or missing.

15.      The Board complied with its policy requiring a legal investigation into the issue, and there was no finding of any deletion or tampering with records or emails.

16.     Dr. Steed's allegations of deletions and missing emails are based on a reckless mischaracterization of the facts underlying the adoption of a lawful 15-month email retention policy in 2019 at the direction of former President and CEO, Dr. Akram Boutros.

***False statements regarding Dr. Steed's performance and the decision to end her at-will employment***

17.     In an interview with Crains' Cleveland Business, Dr. Steed stated, "[t]he board never had a conversation with me about my performance." *See* https://www.crainscleveland.com/health-care/fired-metrohealth-ceo-airica-steed-claims-board-retaliated.

18.     Dr. Steed received an annual performance review, referred to as the 360 Review, in or around March 2024.

19.     Dr. Steed's 360 Review solicited feedback from the Board, external community leaders, Dr. Steed's direct reports, MetroHealth physician leaders, and Dr. Steed herself.

20.     The Board almost unanimously gave Dr. Steed a generally neutral rating in the 360 Review, recognizing that it was her first year.

21.     Dr. Steed's direct reports, however, were divided, with over a third of them consistently rating Dr. Steed as needing improvement on almost all criteria.

22.     Following the 360 Review, Dr. Steed had a meeting with Board Chair Dr. Walker regarding the findings of the 360 Review.

23.     Following the 360 Review, the Board also provided Dr. Steed with a detailed memorandum summarizing the Evaluation Report, referred to as the CEO Evaluation Summary.

24.     The memorandum indicated that Dr. Steed met expectations in four (4) of the seven (7) performance areas, but that improvement was necessary in the remaining three (3) areas: physician relationships/collaboration, effective leadership of management team, and relationship

with Board and Chair.

25.     In the memorandum, the Board provided specific recommendations for Dr. Steed to improve in each of the three (3) performance areas.

26.     For months, the Board encouraged Dr. Steed to implement their recommendations regarding her performance, which included working with an executive level coach and to engage with The Governance Institute to improve her understanding of the role of the Board and her responsibilities to the Board as their subordinate CEO.

27.     Dr. Steed did not implement any of the Board's recommendations.

28.     Dr. Walker, as Board Chair, also explicitly informed Dr. Steed that improvement was necessary via written correspondence in March and May of 2024.

29.     Board Chair Dr. Walker and Vice-Chair Moss met with Dr. Steed in May 2024 to discuss the specific areas which she needed to improve and her failure to implement the recommendations provided to her.

30.     Dr. Steed did not take any action or otherwise adhere to the recommendations of the Board.

31.     Dr. Steed stated in the same Crains' Cleveland Business interview that she "learned of [her] firing through the media, which only compounded the lack of respect and dignity with which I was treated."

32.     The Board's vote to terminate her employment was held in public session at a Board meeting, which Dr. Steed could have attended.

33.     Notwithstanding, Dr. Walker attempted to inform Dr. Steed of the Board's decision immediately after the conclusion of the meeting by calling her. When Dr. Steed did not respond, a letter was promptly sent to her and her legal counsel informing that her at-will employment had

been terminated.

*False statements regarding discrimination by MetroHealth*

34.     In Dr. Steed's interview with WKYC, she stated in response to a question about how it could be that the Board that hired her as MetroHealth's first black and female CEO could have acted so quickly with an intent to discriminate, she stated "I can honestly tell you that…number one, the Board that hired me was completely recycled in this process."

35.     Eight (8) of the nine (9) Board members who voted to hire Dr. Steed remained on the Board through January 2024.

36.     Five (5) of the nine (9) Board members—a majority—who voted to terminate Dr. Steed's employment in August 2024 were on the Board that hired her.

37.     Dr. Steed was never subject to scrutiny because of her race or gender.

38.     Any immediate heightened scrutiny was an effort by the Board to take specific steps to strengthen policies and processes to improve organizational oversight.

39.     As Dr. Steed's tenure progressed, however, she became subject to additional scrutiny due to increasing performance issues, insubordination toward the Board's directives and recommendations, and disregard for Ohio law and MetroHealth's policies and procedures.

40.     Dr. Steed has publicly stated that the Board has ignored her concerns of discrimination based on her race and sex.

41.     The Board, consistent with MetroHealth policy took action that revealed that Dr. Steed's concerns of a hostile work environment and race and sex discrimination were found to be meritless.

42.     Consistent with Board policies, MetroHealth conducted a thorough legal investigation of the allegations.

43.     MetroHealth found the allegations to be unsubstantiated.

44.     It is apparent that Dr. Steed's complaints were made in an effort to create her claims against MetroHealth as a result of MetroHealth's growing concerns with Dr. Steed's performance.

## COUNT I
## Defamation

45.     MetroHealth reincorporates all preceding paragraphs of this Counterclaim as if fully restated herein.

46.     The foregoing defamatory statements made by Dr. Steed are demonstrably false.

47.     These statements are purported factual statements that are made by Dr. Steed in a manner that implies that she is aware of verifiable, first-hand evidence that supports her claims.

48.     Dr. Steed issued these statements to the public, including through news and media outlets.

49.     Dr. Steed made these statements with actual knowledge or with reckless disregard for their truth or falsity.

50.     Dr. Steed made these allegations with actual malice and in an effort to retaliate against MetroHealth.

51.     As a result of Dr. Steed's statements, MetroHealth has sustained significant and irreparable harm and actual damages.

## COUNT II
## Breach of Employment Agreement

52.     MetroHealth reincorporates all preceding paragraphs of this Counterclaim as if fully restated herein.

53.     Dr. Steed entered into the Employment Agreement with MetroHealth on or about September 22, 2022.

54.     Section 7(A) of the Employment Agreement states:

> "Executive acknowledges that, during the course of Executive's employment with the [MetroHealth] System, Executive will have access to confidential information. Executive acknowledges and agrees that Executive will maintain, store, and return System information as protected by federal, state, and other relevant laws and regulations, and the System's policies, including Policy [GEN]-05."

55.     MetroHealth Policy GEN-05 – Confidential Business-Related Information states, in part, that "[n]o present or former Workforce Member may disclose or use, without appropriate authorization, any [Confidential Business-Related Information]."

56.     As set forth in GEN-05, Confidential Business-Related Information includes:

> Information related to MHS information systems; strategic planning; marketing strategies; internal, confidential reports; proprietary information; payor rates and negotiations; and other information acquired by Workforce Member in the course of Workforce Member's duties for MHS that the Workforce Member knows or should know if confidential due to the sensitive or proprietary nature of the information or the circumstances under which it is shared, including but not limited to information covered by statutory provisions governing trade secrets, attorney-client privilege, and quality assurance and/or peer review matters.

57.     Dr. Steed has publicly disclosed or purported to disclose Confidential-Business Information of MetroHealth in violation of her Employment Agreement and GEN-05, including but not limited to, information pertaining to MetroHealth's internal audit processes and related services provided by E&Y. Dr. Steed's purported disclosure of such information has included the dissemination of inaccurate information.

58.     Dr. Steed, having held multiple high level executive positions and having signed the Employment Agreement, knew or should have known that such information was confidential and should not be disclosed.

59.     Dr. Steed's disclosure of MetroHealth's Confidential Business-Related Information constitutes a breach of the Employment Agreement.

60.     As a direct and proximate result of Dr. Steed's disclosure of MetroHealth's Confidential-Business Information, MetroHealth has suffered economic and non-economic damages.

61.     Section 7(B) of the Employment Agreement states, in relevant part:

> "Executive agrees that during and after Executive's term of employment, Executive will not make any representations, orally or in writing, that are disparaging of the [MetroHealth] System or its affiliates and their directors, trustees, officers, employees, and agents."

62.     Dr. Steed has disclosed Confidential Business-Related Information to the public and in the media in violation of the Employment Agreement and MetroHealth policy.

63.     The information improperly disclosed includes proprietary information and internal, confidential reports.

64.     Dr. Steed has made numerous false and damaging statements regarding MetroHealth, as identified above.

65.     Dr. Steed has violated Section 7(B) of the Employment Agreement by making statements which disparage MetroHealth, its Board, and employees.

66.     MetroHealth has at all times fulfilled its obligations under the Employment Agreement.

67.     As a direct and proximate result of Dr. Steed's statements made in breach of the Employment Agreement, MetroHealth has sustained economic and non-economic damages.

## COUNT III
### Civil Liability under R.C. § 2307.60:
### Dr. Steed's Violation of R.C. § 2913.02

68.     MetroHealth reincorporates all preceding paragraphs of this Counterclaim as if fully restated herein.

69.     Ohio Rev. Code § 2307.60 allows anyone injured by a criminal act to recover full damages in a civil action.

70.     Per MetroHealth policies and procedures, Dr. Steed was obligated to return all MetroHealth property upon the conclusion of the at-will relationship.

71.     Dr. Steed's at-will relationship with MetroHealth ended on or about August 8, 2024.

72.     MetroHealth has demanded that Dr. Steed return all MetroHealth property in accordance with its policies and procedures.

73.     Dr. Steed has not returned all MetroHealth property in her possession, including MetroHealth computers, phones, records, and all other MetroHealth property, including trade-secret or attorney-client confidential communications that were provided to her during her tenure as an at-will employee.

74.     Dr. Steed has, and continues to, withhold MetroHealth's property with the express purpose of returning it upon certain unilateral conditions being met.

75.     Dr. Steed has knowingly retained control over MetroHealth property without the consent of MetroHealth, and in direct contravention to MetroHealth's requests that she return the property.

76.     Dr. Steed has acknowledged her wrongful control over MetroHealth property.

77.     Dr. Steed expressed her intent to maintain control over certain MetroHealth property, including an Apple iPhone, a Dell laptop and an Apple iPad.

78.     Dr. Steed's failure to return MetroHealth's property is theft of government property.

79.     Dr. Steed's conduct is a "threat offense" as defined by Ohio Rev. Code § 2913.01(K).

80.     Dr. Steed's actions constitute a violation of Ohio Rev. Code § 2913.02.

81.     As a direct and proximate result of Dr. Steed's conduct, as set forth in § 2307.60, MetroHealth has and will continue to suffer economic and non-economic damages, including but not limited to, the costs of bringing this claim and deprivation of property.

82.     Pursuant to Ohio Rev. Code § 2307.60 and Ohio Rev. Code § 2307.61, MetroHealth is entitled to compensatory damages, treble damages in an amount to be determined at trial, and the costs of maintaining the civil action, including administrative costs and attorney's fees.

### COUNT IV
### Misappropriation of Trade Secrets
### under the Uniform Trade Secrets Act, R.C. 1333.61

83.     MetroHealth reincorporates all preceding paragraphs of this Counterclaim as if fully restated herein.

84.     The trade secret exception to the availability of public records is codified at Ohio Rev. Code § 149.43.

85.     Pursuant to Ohio Rev. Code § 149.43(A)(1)(q), a public record does not include "[i]n the case of a county hospital operat[ing] pursuant to Chapter 339. of the Revised Code or a municipal hospital operat[ing] pursuant to Chapter 749. of the Revised Code, information that constitutes a trade secret, as defined in section 1333.61 of the Revised Code[.]"

86.     Ohio Rev. Code § 1333.61 defines a trade secret as:

> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business

information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

87.     Information pertaining to MetroHealth's business operations are trade secrets protected under Ohio Rev. Code § 1333.61.

88.     Information pertaining to E&Y's internal audit services of MetroHealth are trade secrets protected under Ohio Rev. Code § 1333.61.

89.     MetroHealth possesses trade secret information from which it derives independent economic value because such trade secret information is not generally known so that other persons cannot obtain economic value from its disclosure or use.

90.     MetroHealth takes reasonable efforts to maintain the secrecy of such confidential and proprietary information, including but not limited to having its employees agree to non-disclosure provisions and advising them of its policy against disclosure of Confidential Business-Related Information.

91.     Dr. Steed was entrusted with such protected information as a result of her role as CEO of MetroHealth.

92.     Under Dr. Steed's Employment Agreement with MetroHealth, at Section 7(A), she had a specific duty to not disclose, and maintain the confidentiality of, such information.

93.     Dr. Steed disclosed confidential and proprietary business information pertaining to MetroHealth's internal audit services with E&Y. Although Dr. Steed's public comments about the internal audit process have included false statements (including Dr. Steed's false assertion that E&Y made findings of misconduct), her willingness to publicly discuss any details of the internal

audit process – regardless of the veracity of Dr. Steed's statements – illustrate a willful disregard of Dr. Steed's obligations of confidentiality to MetroHealth and under Ohio law.

94.     Dr. Steed was not authorized, and specifically prohibited, from disclosing, or purporting to disclose, this protected information by MetroHealth.

95.     By disclosing this information, Dr. Steed violated the Uniform Trade Secrets Act, Ohio Rev. Code § 1333.61.

96.     Dr. Steed's disclosure of MetroHealth's trade secrets, including through news and media outlets, was done willfully and maliciously.

97.     Any ongoing disclosure of MetroHealth's protected trade secrets will further damage and cause irreparable harm to MetroHealth.

98.     As a result of Dr. Steed's conduct, MetroHealth has been damaged, for which it is entitled to injunctive relief and monetary damages, together with punitive damages, treble damages, attorneys' fees, and costs in an amount to be determined at trial.

**COUNT V**
**Civil Conversion**

99.     MetroHealth reincorporates all preceding paragraphs of this Counterclaim as if fully restated herein.

100.    Dr. Steed is in possession of property which belongs to MetroHealth, including MetroHealth computers, phones, records, and all other MetroHealth property, as well as trade-secret or attorney-client confidential communications that were provided to her during her tenure as an at-will employee.

101.    Dr. Steed has expressly acknowledged that MetroHealth is the owner of the property which she retains possession of.

102.    Following the end of the at-will employment relationship between MetroHealth and

Dr. Steed, Dr. Steed was obligated to return the property per MetroHealth policies and procedure, and no longer had MetroHealth's consent to retain the property under her control.

103.    Since the end of her at-will employment with MetroHealth, Dr. Steed has wrongfully maintained possession over MetroHealth's property.

104.    MetroHealth has demanded that Dr. Steed return the MetroHealth property on multiple occasions, both orally and in writing.

105.    Dr. Steed has failed to return MetroHealth's property.

106.    Dr. Steed's conduct is intentional and constitutes civil conversion.

107.    As a result of Dr. Steed's conduct, MetroHealth has sustained damages in an amount to be proven at trial, and attorneys' fees and costs.

### PRAYER FOR RELIEF

WHEREFORE, MetroHealth seeks the following relief:

1.    For compensatory and punitive damages, non-economic damages including public retraction, attorneys' fees and costs, witness fees, expert fees, and pre-judgment and post-judgment interest; and

2.    Any and all other relief in law or equity to which MetroHealth may be entitled.

### JURY DEMAND

MetroHealth hereby demands a trial by jury on all issues, claims, actions, and defenses so triable.

Dated: May 7, 2025                       Respectfully submitted,

*/s/ Adrian D. Thompson*
Adrian D. Thompson (0036742)
athompson@taftlaw.com
John R. Mitchell (0066759)
jmitchell@taftlaw.com
Philip Williamson (0097174)
pwilliamson@taftlaw.com
Allison McFarland (MA703697)
amcfarland@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, OH 44114-2302
Phone: (216) 706-3912
Facsimile: (216) 241-3707

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2025, a true and accurate copy of the foregoing was filed electronically via the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

*/s/ Adrian D. Thompson*
Adrian D. Thompson (0036742)

*Attorney for Defendants*