**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **AIRICA STEED, ED.D.** | ) | **CASE NO. 1:25-CV-00443-PAB** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PAMELA A. BARKER** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE METROHEALTH SYSTEM, ET AL.,** | ) | **DEFENDANTS' MEMORANDUM OF** |
| | ) | **LAW IN SUPPORT OF MOTION TO** |
| **Defendants.** | ) | **DISMISS WITH 10 ADDITIONAL** |
| | ) | **PAGES GRANTED BY THE COURT ON** |
| | ) | **MAY 2, 2025** |
| | ) | |

# TABLE OF CONTENTS

Table of Authorities ................................................................................................ iii

I.    Brief Statement of Issues. ........................................................................ 1

II.   Summary of the Argument Presented.. ..................................................... 1

III.  Factual Allegations .................................................................................. 4

      A.  Dr. Steed's Tenure At MetroHealth ................................................. 4

IV.   Law & Argument ..................................................................................... 6

      A.  Legal Standard ................................................................................ 6

      B.  Dr. Steed's Claim for Wrongful Discharge (Count IV) Fails
          Because Dr. Steed Does Not Identify Any Public Policy Violated
          By Her Discharge ............................................................................ 6

          i.    Dr. Steed fails to satisfy the clarity element of her wrongful
                discharge claim because she does not cite specific and clear
                law ......................................................................................... 7

          ii.   Dr. Steed fails to satisfy the jeopardy element of her
                wrongful discharge claim .................................................... 8

      C.  Dr. Steed's Hostile Work Environment Claim (Count IX) Fails As
          A Matter Of Law ............................................................................. 11

          i.    As a threshold matter, Dr. Steed cannot establish a hostile
                work environment claim against the Individual Defendants
                as a matter of law. ............................................................... 11

          ii.   Even when assumed to be true, the conduct Dr. Steed
                alleges to support her hostile work environment claim was
                not severe and pervasive, did not impact Dr. Steed's
                performance, and therefore fails to state a hostile work
                environment claim against any Defendant under Title VII
                or O.R.C. § 4112.02 ............................................................ 12

      D.  Dr. Steed's Invasion Of Privacy Claim Against MetroHealth
          (Count X) Fails Because There Was No Wrongful Intrusion Or
          Publicizing Of Her Private Affairs ................................................. 15

          i.    MetroHealth did not invade Dr. Steed's privacy by
                "accessing" information she submitted regarding her
                medical issues ..................................................................... 15

i

    ii.    MetroHealth's limited disclosure of the medical
information is not publicity of a private facts because Dr.
Steed herself put the information at issue ................................................16

  E. Dr. Steed's Defamation Claim Against the Individual Defendants
(Count V) Fails Because The Alleged Defamatory Statements Are
Not Actionable .........................................................................................19

    i.    A claim for defamation requires more than the allegations
contained in Dr. Steed's Complaint ............................................19

    ii.    The alleged statements regarding the Individual
Defendants' handling and/or investigation of complaints
raised about Dr. Steed are subject to qualified privilege .........................21

    iii.    Dr. Steed alleges statements that plainly cannot meet the
pleading standard required for a claim of defamation
because they are not alleged to be false statements of fact........................23

    iv.    Dr. Steed complains of statements that are truthful ...................................24

    v.    Dr. Steed complains of statements that constitute
Defendants' opinion, as opposed to statements of fact.............................25

V.    CONCLUSION........................................................................................................26

## Table of Authorities

Page(s)

**Cases**

*Anthony List v. Driehaus*,
    779 F.3d 628 (6th Cir. 2015) ...............................................................23

*Armstrong v Whirlpool Corp*,
    363 Fed. Appx. 317 (6th Cir. 2010) ......................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................23

*Bentkowski v. Scene Mag.*,
    637 F.3d 689 (6th Cir. 2011) ..........................................................23, 25

*Bickerstaff v. Lucarelli*,
    830 F.3d 388 (6th Cir. 2016) .............................................................6, 7

*Blagg v. S.T.O.F.F.E. Fed. Credit Union*,
    248 N.E.3d 313 (2024) ..........................................................................13

*Bukowski v. Hall*,
    165 F. Supp. 2d 674 (N.D. Ohio 2001) .................................................24

*Carrasco v. NOAMTC Inc.*,
    124 F. App'x 297 (6th Cir. 2004) ..................................................8, 9, 10

*Coryell v. Bank One Trust Co., NA.*,
    101 Ohio St.3d 175 (2004) ....................................................................12

*Croce v. New York Times Co.*,
    930 F.3d 787 (6th Cir. 2019) ................................................................20

*Dohme v. Eurand Am., Inc.*,
    130 Ohio St.3d 168 (2011) ..............................................................6,7,8

*Ellsworth v. Pot Luck Enters., Inc.*,
    624 F. Supp.2d 868 (M.D. Tenn 2009) ................................................14

*State ex rel. Fair Hous. Opportunities of Nw. Ohio v. Ohio Fair Plan*,
    172 Ohio St.3d 149 (2022) ....................................................................24

*Floyd v. SunTrust Banks, Inc.*,
    878 F.Supp.2d 1316 (N.D. Ga. 2012) ..................................................18

iii

*Genaro v. Central Transport, Inc.*,
  84 Ohio St. 3d 293 (1999) ..............................................................................12

*Gill v. Gill*,
  No. 81463, 2003 WL 132447 (Ohio Ct. App.) ........................................................18

*Grair v. Ohio Bell Tel. Co.*,
  2009 WL 2762359 (N.D. Ohio Aug. 28, 2009) ........................................................9

*Greeley v. Miami Valley Maintenance Contrs., Inc.*,
  49 Ohio St.3d 228 (1990) ..............................................................................6

*Griffin v. Finkbeiner*,
  689 F.3d 584 (6th Cir. 2012) ..........................................................................11

*Hageman v. Sw. Gen. Health Ctr.*,
  119 Ohio St.3d 185 (2008) ............................................................................18

*Hahn v. Kotten*,
  43 Ohio St.2d 237 (1975) ..............................................................................21

*Harris v. Bornhorst*,
  513 F.3d 503 (6th Cir. 2008) ..........................................................................25

*Harris v. Forklift Sys., Inc.*,
  510 U.S. 17 (1993) ...............................................................................14, 25

*Hawkins v. Anheuser-Busch, Inc.*,
  517 F.3d 321 (6th Cir. 2008) ..........................................................................13

*Heigel v. MetroHealth Sys.*,
  241 N.E.3d 380 (Ohio Ct. App. 2024) .............................................................1, 7, 8

*Jackson v. Columbus*,
  117 Ohio St. 3d 328 (2008) ............................................................................21

*Jackson v. Quanex Corp.*,
  191 F.3d 647 (6th Cir. 1999) ..........................................................................13

*Leininger v. Pioneer Natl. Latex*,
  115 Ohio St.3d 311 (2007) ..............................................................................9

*Lentz v. City of Cleveland*,
  No. 1:04CV0669, 2006 WL 1489379 (N.D. Ohio 2006) ..............................................18

*Lloyd v. Cannon*,
  No. 4:21-CV-1476, 2022 WL 5161424 (N.D. Ohio Oct. 5, 2022), *aff'd*, No.
  22-3878, 2023 WL 7182130 (6th Cir. June 27, 2023) ................................................23

iv

*Maddox Def., Inc. v. GeoData Sys. Mgmt., Inc.*,
    135 N.E.3d 1212 (Ohio Ct. App. 2019)........................................................24

*Menorah Park Ctr. for Senior Living v. Rolston*,
    164 Ohio St.3d 400 (2020)........................................................18

*Mers v. Dispatch Printing Co.*,
    19 Ohio St.3d 100 (1985)........................................................6

*Mitchell v. Fujitec Am., Inc.*,
    518 F. Supp.3d 1073 (S.D. Ohio 2021)........................................................17

*Parry v. Mohawk Motors of Midi. Inc.*,
    236 F.3d 299 (6th Cir. 2001)........................................................15

*Patrick v. Cleveland Scene Pub. LLC*,
    582 F. Supp.2d 939 (N.D. Ohio 2008), *aff'd*, 360 F. App'x 592 (6th Cir. 2009)....................17

*Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm.*,
    66 Ohio St.2d 192 (1981)........................................................12

*Roberts v. Hagen*,
    No. 2845-M, 2000 WL 150766 (Ohio Ct. App. 2000)........................................................17

*Shingler v. Provider Servs. Holdings, L.L.C.*,
    No. 106383, 2018 WL 3414268 (Ohio Ct. App.)........................................................7

*Smith v. Leggett Wire Co*,
    220 F.3d 752 (6th Cir. 2000)........................................................14

*Stange v. Deloitte & Touche*,
    2006 WL 871242 (S.D. Ohio Apr. 5, 2006)........................................................9, 10

*Welling v. Weinfeld*,
    113 Ohio St.3d 464 (2007)........................................................17

*Wiles v. Medina Auto Parts*,
    96 Ohio St.3d 240 (2002)........................................................8, 9

*Williams v. CSX Transp. Co.*,
    643 F.3d 502 (6th Cir. 2011)........................................................12, 13

*Williams v. Gen. Motors Corp.*,
    187 F.3d 553 (6th Cir. 1999)........................................................13

**Statutes**

26 U.S.C. § 2613........................................................16

42 U.S.C. § 2000e ..................................................................................................8

42 U.S.C. § 2000e-2(a) ....................................................................................10, 11

Civil Rights Act of 1964 Title VII ........................................................... *passim*

Family Medical Leave Act ........................................................................ *passim*

O.R.C. Chapter 4112 .....................................................................................8, 9, 12

O.R.C. § 149.43(A)(1) ...........................................................................................24

O.R.C. § 2739.02 ...................................................................................................24

O.R.C § 4112 ........................................................................................................12

O.R.C. § 4112.02 .........................................................................................10, 11, 12

O.R.C. § 4113.52(A)(1)(a) .....................................................................................10

O.R.C. § 4113.52(D) & (E) ....................................................................................10

Ohio Public Records Act .......................................................................................24

Ohio Whistleblower Act (O.R.C. § 4113.52) .................................................8, 10

**Other Authorities**

Federal constitution .................................................................................................6

Local Civil Rule 7.1(f) ...........................................................................................28

Local Rule 7.1(f) ...............................................................................................1, 28

Ohio Constitution ...................................................................................................25

Restatement (Second) of Torts § 652D ..................................................................17

Feed.Civ.R. 12(b)(6) ................................................................................................2

United States Constitution .......................................................................................6

## I.    BRIEF STATEMENT OF ISSUES[1]

1)  Whether Dr. Steed has adequately pled a cause of action for Wrongful Discharge?

2)  Whether Dr. Steed has adequately pled a cause of action for Hostile Work Environment?

3)  Whether Dr. Steed has adequately pled a cause of action for Invasion of Privacy?

4)  Whether Dr. Steed has adequately pled a cause of action for Defamation?

## II.    SUMMARY OF THE ARGUMENT PRESENTED

The Board of Trustees (the "Board") of The MetroHealth System ("MetroHealth") unanimously voted to hire Dr. Airica Steed ("Dr. Steed") as its first African American, female CEO in September 2022. The Board had high hopes for Dr. Steed's leadership. However, over the course of her 20-month tenure, it became increasingly clear that Dr. Steed did not appreciate her role as CEO and public official, the authority of the Board to which she reported, and the ethical duties and responsibilities of MetroHealth's legal counsel and compliance professionals. Dr. Steed came to view the Board as an adversary, instead of the governing body responsible for evaluating her performance. And she incorrectly perceived the job of MetroHealth's legal counsel and compliance professionals to represent her interests, as opposed to the interests of MetroHealth.

Over the course of 2024, Dr. Steed's performance and her respect for the Board progressively deteriorated. Dr. Steed increasingly put her own interests before those of MetroHealth by, for example, unduly preventing the organization from fulfilling its statutory duty to respond to public records requests, her insubordination toward the Board's directives and recommendations, unprecedented turnover rate under her leadership, and exercising poor judgment in the exercise of her duties as CEO, including travel resulting in significant time out of the office and cost to MetroHealth. Efforts by Board leadership to address these various

---

[1] Defendants include a Brief Statement of the Issues consistent with Local Rule 7.1(f).

performance concerns were met with a response ranging from disengagement to open hostility.

Ultimately, the Board concluded that it was in MetroHealth's best interest to end Dr. Steed's employment, which it did via a unanimous vote at a meeting on August 9, 2024. As a public body, the Board balanced the interest of public awareness regarding the reason for its decision against its interest to resolve Dr. Steed's separation consistent with the terms of the Employment Agreement. As such, the Board limited its public comments on the matter to truthful, but succinct statements simply summarizing that in the Board's opinion, Dr. Steed's performance was not acceptable. Further, the Board exercised its option to terminate Dr. Steed's employment "without Cause," as defined in her employment agreement, meaning that—as Dr. Steed and the Board agreed at the time of her hiring—Dr. Steed would be entitled to up to two years of severance compensation in exchange for her execution of a customary separation agreement and release of claims.

Sadly, Dr. Steed has rejected the Board's willingness to abide by its contractual obligations and has instead chosen a reckless, destructive path of false allegations against MetroHealth and a number of its dedicated volunteer Board members and employees. She has filed a ten-count Amended Complaint (ECF No. 7) (the "Complaint") against MetroHealth, two members of MetroHealth's Board, the Board's Liaison, and several of her former subordinates (collectively, the "Defendants").[2] Four of her claims should be dismissed under Rule 12(b)(6) for failure to state a claim: Wrongful Discharge in Violation of Public Policy (Count IV), Hostile Work Environment (Count IX), Invasion of Privacy (Count X), and Defamation (Count V). The other claims will fail at summary judgment.

---

[2] For purposes of this Memorandum, the individual defendants are Dr. E. Harry Walker (Board Chair), John Moss (Vice-Chair), Tamiyka Rose (Board Liaison), Laura McBride (Former General Counsel), Sonja Rajki (Former General Counsel), Sarah Partington (Director of Compliance Operations/Senior Compliance Officer), and Robin Barre (Director of Compliance) (collectively, the "Individual Defendants").

The claims identified in this Motion warrant dismissal for the following reasons:

First, Dr. Steed alleged a claim for Wrongful Discharge in Violation of Public Policy against MetroHealth, but she does not identify the "public policy" MetroHealth violated. Nor does she tell MetroHealth or the Court where to find it. Even if the Court scours "the Ohio and United States Constitutions, state law, administrative rules and regulations, and Ohio common law" for a relevant public policy, Dr. Steed undoubtedly has adequate alternative (and specific) remedies to vindicate that policy. Her impossibly broad, catch-all claim will not do.

Second, Dr. Steed alleges that Defendants created a hostile work environment for her, though she did not allege a violation under Ohio or Federal law. She cannot proceed against any of the Individual Defendants under Federal law because they are not her "employers" as the term is defined in Title VII. And, under both Ohio and Federal law, her claim fails as to all defendants because she does not plead any conduct by any defendant that was "severe and pervasive." Dr. Steed does not allege that the work environment impeded her ability to do her job. She instead insists that she excelled, which must, for the purposes of this motion, be assumed to be true and is, thus, fatal to her claim.

Third, Dr. Steed alleges that MetroHealth invaded her privacy by accessing her health information (related to FMLA leave) and sharing some of that information with MetroHealth employees, outside counsel, and the Equal Employment Opportunity Commission ("EEOC"). But MetroHealth did not "access" Dr. Steed's information; Dr. Steed shared it with MetroHealth in order to request FMLA leave. MetroHealth did not "publicize" that information by sharing it with a limited group of people—particularly where *Dr. Steed* brought an FMLA retaliation charge against MetroHealth before the EEOC and MetroHealth had to share that information with its outside counsel and the EEOC in order to respond to the charge.

3

Finally, Dr. Steed asserts that she was defamed by MetroHealth and the Individual Defendants. As to the Individual Defendants, the allegedly defamatory statements are all truthful, statements of opinion, or protected by qualified privilege.

Granting this motion in full will limit this matter to only those parties that should be at issue in this employment dispute—Dr. Steed (the employee) and MetroHealth (the employer)—and to the claims that have been properly pled. For these reasons, and those set forth more fully below, Defendants respectfully request that the Court dismiss Counts IV and X against MetroHealth and Counts V and IX against all Defendants.

## III.  FACTUAL ALLEGATIONS

### A.  Dr. Steed's Tenure At MetroHealth

MetroHealth employed Dr. Steed as CEO beginning on December 5, 2022. (ECF No. 7, ¶¶ 19, 21.) As her tenure progressed at MetroHealth, it became apparent that Dr. Steed was not fit for the role of CEO and that efforts to improve her performance were not going to be successful. (*Id.* ¶¶ 142, 147.) She did not meet the reasonable expectations of the Board, nor did she facilitate a productive and professional relationship with the Board. (*Id.*) Despite having months to address these issues, Dr. Steed made no improvements. (*Id.*)

MetroHealth ended the at-will employment relationship with Dr. Steed consistent with the terms of her at-will employment agreement (the "Employment Agreement") without Cause in August of 2024 as a result of her failure to perform as CEO and based on her direct interactions with the Board. (ECF No. 7, ¶¶ 112, 147.) Dr. Steed's performance issues were longstanding, and she failed for months to address them, leaving MetroHealth with no choice but to terminate her. (*Id.*) The Board voted to terminate Dr. Steed's at-will Employment Agreement on August 9, 2024, due to her poor performance and her inability to meet the needs of MetroHealth. (*Id.* ¶¶ 112, 142.)

Now, Dr. Steed claims that during the course of her employment, she was immediately subject to discrimination, harassment, and a hostile work environment, yet she did not raise these concerns until just prior to her termination and when the performance issues, of which she was well aware, had been ongoing for months. (ECF No. 7, ¶¶ 85, 147.) While she allegedly experienced this conduct as early as the first month of her employment, Dr. Steed remained silent on the issue for a year and a half—not voicing any concerns until late June or early July of 2024. (*Id*. ¶ 85.) Despite the alleged year and a half of mistreatment, Dr. Steed believes she performed well and had a positive 360 Review. (*Id*. ¶¶ 47-48, 270, 295.)

Yet, Dr. Steed alleges that, "as a result of the continued harassment, discrimination, and toxic work environment," she sought medical care and requested FMLA leave. (ECF No. 7, ¶¶ 101, 102.) On or about July 19, 2024, Dr. Steed submitted information regarding her medical issues to MetroHealth and took approved FMLA leave shortly thereafter. (*Id*. ¶ 102.)

Dr. Steed subsequently filed a dual Charge with the Ohio Civil Rights Commission ("OCRC") and the EEOC on October 30, 2024 (the "Charge"). (*Id*. ¶ 136.) In response to the Charge, MetroHealth submitted position statements to both the OCRC and the EEOC that necessarily included information pertaining to Dr. Steed's FMLA leave. (*Id*. ¶ 138.)

\* \* \*

For the reasons set forth herein, Dr. Steed fails to state a claim for Wrongful Discharge in Violation of Public Policy, Hostile Work Environment, Invasion of Privacy, and Defamation. Therefore, these claims must be dismissed.

## IV.     LAW & ARGUMENT

### A.  Legal Standard

To survive a motion to dismiss, a complaint must allege facts that—if taken as true—state a plausible, more-than-speculative claim for relief. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016). The Court must draw all reasonable inferences in the plaintiff's favor (but only the reasonable ones), but the Court does not have to accept conclusory legal allegations as true. *Id.*

### B.  Dr. Steed's Claim for Wrongful Discharge (Count IV) Fails Because Dr. Steed Does Not Identify Any Public Policy Violated By Her Discharge.

Dr. Steed alleges that her termination violates public policy. But her claim fails because she does not tell the Court or MetroHealth what public policy her termination violated, or even which law (state or federal) created it. Specifically, Dr. Steed's cause of action for Wrongful Discharge in Violation of Public Policy must fail as a matter of law because she cannot establish the "clarity" and the "jeopardy" elements—both necessary to establish a prima facie case.

Under Ohio law, the common-law doctrine of employment at will governs the employment relationship. *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 103 (1985). "However, if an employee is discharged or disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 171 (2011), citing *Painter v. Graley*, 70 Ohio St.3d 377 (1994), paragraph three of the syllabus; *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228 (1990), paragraph one of the syllabus.

The elements of a claim of wrongful discharge in violation of public policy are:

(1)     A clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law;

6

(2)      That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy;

(3)      The plaintiff's dismissal was motivated by conduct related to the public policy; and

(4)      The employer lacked overriding legitimate business justification for dismissal.

*Dohme*, 130 Ohio St. at 829.

The clarity and jeopardy elements are questions of law to be decided by the Court; the causation and overriding justification elements are questions of fact to be decided by the fact finder. *Shingler v. Provider Servs. Holdings, L.L.C.*, No. 106383, 2018 WL 3414268, *5 (Ohio Ct. App.).

### i. Dr. Steed fails to satisfy the clarity element of her wrongful discharge claim because she does not cite specific and clear law.

A wrongful discharge plaintiff must identify a clear public policy set forth in a specific law. *Dohme*, 130 Ohio St. at 831. Dr. Steed does not do that. She points the Court to "the Ohio and United States Constitutions, state law, administrative rules and regulations, and Ohio common law." (ECF No. 7, ¶ 195.) Dr. Steed lifts this language word for word from applicable case law, rendering her purported wrongful discharge claim a legal conclusion with no facts in support. Accordingly, the Court does not have to (and should not) accept it as true. *Bickerstaff*, 830 F.3d at 396. Even if the Court does accept Dr. Steed's legal conclusions as true, she still cannot prevail.

As the Ohio Court of Appeals explained just last year, it is the plaintiff's "burden to identify the specific sources of public policy that apply to the facts of the case." *Heigel v. MetroHealth Sys.*, 241 N.E.3d 380, 387 (Ohio Ct. App. 2024). And, if a plaintiff cannot meet that burden by referring to "countless state and federal statutes and regulations [that] embody a public policy of

maintaining and protecting patient safety," *id.*, then surely Dr. Steed cannot do so by gesturing toward *everything and anything* that could count as Ohio or federal "law."

One might squint and find a vague reference to the Ohio Whistleblower Act (O.R.C. § 4113.52) or Ohio and Federal employment discrimination statutes (O.R.C. Chapter 4112 and 42 U.S.C. § 2000e). But that is Defendants' best guess—specific statutory references are nowhere to be found in Count IV. And even if Defendants do the lifting of identifying possible statutes, Dr. Steed still does not identify what "clear" public policy her termination might violate. Dr. Steed does not identify what the clear public policy is, nor does she sufficiently plead or cite to any specific law. Rather, Dr. Steed generally alleges that MetroHealth violated the clear public policies manifested *somewhere* in all Ohio and federal law. (ECF No. 7, ¶¶ 195, 196.) This is insufficient to meet the clarity element. *See Dohme*, 130 Ohio St. at 831 ("A general reference to workplace safety is insufficient to meet the clarity element."). Accordingly, Dr. Steed cannot establish the clarity element, and this claim should be dismissed.

### ii. Dr. Steed fails to satisfy the jeopardy element of her wrongful discharge claim.

Assuming Dr. Steed could satisfy the clarity element (she cannot), she still cannot establish a prima facie case of wrongful discharge in violation of public policy because alternative, adequate remedies exist. "Ohio common law does not recognize an action for wrongful discharge where a statutory remedy exists." *Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 298 (6th Cir. 2004). This is because "the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 244 (2002). Under the *Wiles* approach, a court is required to inquire into whether there are existing statutory

8

remedies that provide "any alternative means of promoting the particular public policy to be vindicated." *Id.* at 244. The *Wiles* court recognized that if a statutory remedy already existed, the public policy would not be jeopardized by the lack of a parallel public policy claim. *Id.*; *see also Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 317 (2007) ("It is clear that when a statutory scheme contains a full array of remedies, the underlying public policy will not be jeopardized if a common-law claim for wrongful discharge is not recognized based on that policy.").

The Sixth Circuit, the Northern District of Ohio, and the Ohio Supreme Court have consistently rejected the "belt and suspenders approach" stating that "[i]f existing law already provides remedies sufficient to vindicate the public policy at issue, a plaintiff may not maintain a common-law wrongful discharge claim." *Grair v. Ohio Bell Tel. Co.*, 2009 WL 2762359, at *2 (N.D. Ohio Aug. 28, 2009); *see also Carrasco*, 124 F. App'x at 304 (affirming grant of summary judgment on claim of wrongful discharge in violation of public policy under Ohio common law where plaintiff had a remedy available to him under both Title VII and O.R.C. Chapter 4112); *Leininger*, 115 Ohio St. at 311 (holding a common-law tort claim for wrongful discharge based on public policy against age discrimination does not exist, because statutory remedies provide complete relief for a claim for age discrimination); *Stange v. Deloitte & Touche*, 2006 WL 871242, at *3 (S.D. Ohio Apr. 5, 2006) (explaining "Ohio courts have repeatedly held that the broad scope of remedies available under Title VII . . . adequately protect against discrimination.").

Dr. Steed cannot establish the jeopardy element because it is clear from her Complaint that adequate statutory remedies are available that adequately protect society's interests and vindicate Dr. Steed's statutory rights. Dr. Steed is aware of the protections offered by the statutes because she separately asserts claims under each in this action. (*See* ECF No. 7, Counts VII-IX.) These

statutes are specifically intended to safeguard society's interest and public policies that protect substantial rights of the employee.

If the Court and MetroHealth assume, for the purposes of this motion, that Dr. Steed's wrongful discharge claims are based on O.R.C. § 4113.52(D) & (E), the claim still fails because of the protections provided by that statute. The Ohio Whistleblower Statute specifically pertains to situations when "an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision[.]" O.R.C. § 4113.52(A)(1)(a). Here, Dr. Steed claims that MetroHealth terminated her for reporting alleged violations of unlawful conduct (ECF No. 7, ¶ 197), which is precisely the type of allegation contemplated, and addressed, by the Ohio Whistleblower Statute. Notably, the Ohio Whistleblower Statute sets forth clear protections from wrongful or retaliatory discharge for reporting alleged violations, as well as specific remedies for plaintiffs who demonstrate that they were terminated in violation of that statute. *See* O.R.C. § 4113.52, generally. Accordingly, because the Ohio Whistleblower Statute provides an avenue for Dr. Steed to pursue the exact relief (we assume) she is seeking in her claim for violations of public policy, she is not entitled to bring common law public policy claims and a claim under the Ohio Whistleblower Statute.

If the Court and MetroHealth assume Dr. Steed is alleging termination in violation of the public policies set forth under Title VII of the Civil Rights Act of 1964; 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 2000e-2(a); or O.R.C. § 4112.02, the claim again must fail. These statutes each contain remedies to protect Dr. Steed's rights, obviating the need for a common law action for wrongful discharge. *See e.g., Carrasco* and *Stange*, *supra* at Section B(ii).

For the sake of this Motion, and because Dr. Steed failed to articulate her claim *at all*, Defendants constructed this argument out of whole cloth. It should fail on that basis alone. But

10

further grounds exist to dismiss this claim as Dr. Steed does not identify the clear public policy or any specific law, and cannot demonstrate that, absent her wrongful discharge claim, the policies advanced under the relevant statutes would be compromised. Both failures are independently fatal to this claim. Thus, the Court must dismiss Dr. Steed's claim for Wrongful Discharge in Violation of Public Policy (Count IX).

### C. Dr. Steed's Hostile Work Environment Claim (Count IX) Fails As A Matter Of Law.

Dr. Steed purports to assert a claim for hostile work environment but fails to identify the specific statutory basis for her claim. For purposes of this Motion, Defendants presume that Dr. Steed intends to proceed under Title VII and O.R.C. § 4112.02. Dr. Steed's claims of hostile work environment against Defendants fail as a matter of law regardless.

#### i. As a threshold matter, Dr. Steed cannot establish a hostile work environment claim against the Individual Defendants as a matter of law.

Title VII does not permit individual liability, therefore the Individual Defendants cannot be subject to liability under Title VII.

Title VII provides that "it shall be an unlawful employment practice for an employer" to discriminate on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A person aggrieved by such discrimination may bring a cause of action against the "employer," which is defined to mean "a person engaged in an industry affecting commerce who has fifteen or more employees … and any agent of such a person." *Id.* The Sixth Circuit has held that a Plaintiff may not bring a claim against an individual for violations of Title VII, even when acting as an "agent." *Id.*; *Griffin v. Finkbeiner*, 689 F.3d 584, 600 (6th Cir. 2012).

Nor can Dr. Steed allege facts demonstrating that the Individual Defendants meet the statutory definition of an employer or are otherwise liable under O.R.C § 4112.02. In 2021, the

Ohio General Assembly amended O.R.C § 4112.02 and removed statutory language that the Ohio Supreme Court had found could support a theory of supervisor liability in the case *Genaro v. Central Transport, Inc.*, 84 Ohio St. 3d 293 (1999). No allegations in the Complaint support any other theory of individual liability under Ohio law. As such, Dr. Steed's hostile work environment claim—whether read as a claim under Title VII or O.R.C § 4112—cannot be pled against the Individual Defendants for this threshold reason.

> ii. **Even when assumed to be true, the conduct Dr. Steed alleges to support her hostile work environment claim was not severe and pervasive, did not impact Dr. Steed's performance, and therefore fails to state a hostile work environment claim against any Defendant under Title VII or O.R.C. § 4112.02.**

Further, the substantive allegations in the Complaint also do not establish a claim for hostile work environment under Title VII or O.R.C. § 4112.02, whether against Defendant MetroHealth (her employer) or any Individual Defendant. The Ohio Supreme Court has held that federal case law interpreting Title VII applies to cases involving alleged violations of O.R.C. Chapter 4112, thereby establishing a wide body of authority that explains the standards to be applied to Dr. Steed's purported hostile work environment claims under federal and Ohio law. *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192 (1981); *Coryell v. Bank One Trust Co., NA.*, 101 Ohio St.3d 175 (2004).

To survive a motion to dismiss, the plaintiff must allege that: (1) she is a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on her race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment; and (5) Defendants knew or should have known about the harassment and failed to act. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).

On the fourth element of a hostile work environment claim, Dr. Steed must present evidence showing that under the totality of the circumstances the harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. Gen. Motors Corp*., 187 F.3d 553, 560 (6th Cir. 1999).

Factors considered include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Blagg v. S.T.O.F.F.E. Fed. Credit Union*, 248 N.E.3d 313, 334 (2024). "Simple teasing, ... offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Armstrong v Whirlpool Corp*, 363 Fed. Appx. 317, 324 (6th Cir. 2010), quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). The question of whether a plaintiff suffered a hostile work environment involves both an objective component that asks whether a reasonable person would find the environment hostile and abusive, and a subjective component that asks whether the individual plaintiff subjectively viewed that environment as abusive. *Jackson v. Quanex Corp., 191 F.3d 647, 658* (6th Cir. 1999).

Under this standard, Dr. Steed cannot establish that the alleged conduct was severe or pervasive. "The determination of whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment is not susceptible to a mathematically precise test." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (citations omitted).

The same is true for merely offensive utterances that are "certainly insensitive, ignorant, and bigoted[,]" but not severe or pervasive. *Williams*, 643 F.3d at 512-13 (explaining that racial epithets like referring to an employee as a "monkey" and saying that black people should go back to where they come from are "mere offensive utterances" and not conduct that is "physically

threatening or humiliating"). "Offensive feelings" do not sufficiently affect the conditions of employment to implicate Title VII. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations omitted).

Dr. Steed alleges that Defendants Rajki, McBride, Rose, Partington, and Barre brought "unfounded accusations" against her to the Board "behind her back." (ECF No. 7, ¶ 288). Further, Dr. Steed alleges that Defendant Rose sought negative feedback of her. (*Id.* ¶ 289.) To bolster these allegations, Dr. Steed claims that Defendants Walker and Moss were aware of these concerns and other concerns of racial discrimination but did nothing about them. (*Id.* ¶¶ 290-91.) Dr. Steed alleges that she experienced such discrimination, harassment, and hostile work environment immediately upon commencing her role in December of 2022, but she acknowledges that she did not report any concerns or raise any complaints until late June or early July 2024——when she knew her performance was unsatisfactory with the Board. (*Id.* ¶ 301.)

Analyzing this conduct against instances where a plaintiff was called "gorilla," subjected to racially derogatory drawings, or racist jokes, and the court found the conduct was not "severe or pervasive enough" to create an objectively hostile work environment, it is clear in the present case, that Dr. Steed was not subjected to a racially hostile work environment. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 760 (6th Cir. 2000); *see also Ellsworth v. Pot Luck Enters., Inc.*, 624 F. Supp.2d 868, 878 (M.D. Tenn 2009) (explaining that ordinary tribulations of the workplace are insufficient to establish a claim for hostile work environment). At worst, these allegations may be considered merely offensive utterances that invoked offensive feelings in Dr. Steed—conduct that is not physically threatening or sufficiently humiliating as to invoke Title VII protection.

Further, Dr. Steed cannot establish that the alleged conduct unreasonably interfered with her work performance. Dr. Steed's own allegations preclude her claim of hostile work

14

environment. She repeatedly claims that she "demonstrated strong and high-level performance as MetroHealth's CEO, received a high ranking on her 360 employment review, received national awards and accolades and positive attention to MetroHealth." (ECF No. 7, ¶ 122.) She bases this allegation on her belief that she "exceeded the stated goals for every measure of her review and was paid out 121% of her performance-based bonus as a result of [the performance] review." (*Id.* ¶ 47.) By repeatedly emphasizing her strong performance, Dr. Steed undercuts the very basis of her claim.

Thus, absent any facts pled to demonstrate that the alleged conduct was severe or pervasive, or that her performance was unreasonably interfered with by the Defendants, Dr. Steed's claim of hostile work environment against Defendants must be dismissed.

### D. Dr. Steed's Invasion Of Privacy Claim Against MetroHealth (Count X) Fails Because There Was No Wrongful Intrusion Or Publicizing Of Her Private Affairs.

Dr. Steed's invasion of privacy claim fails as a matter of law because she cannot establish any wrongful access to or disclosure of her medical information. Under Ohio law, a claim for invasion of privacy may be based on one of the following types of conduct: (1) "the publicizing of one's private affairs with which the public has no legitimate concern"; (2) "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities"; or (3) "the unwarranted appropriation or exploitation of one's personality." *Parry v. Mohawk Motors of Midi. Inc.*, 236 F.3d 299, 313-14 (6th Cir. 2001). Dr. Steed appears to assert the first two theories in the Complaint.

### i. MetroHealth did not invade Dr. Steed's privacy by "accessing" information she submitted regarding her medical issues.

As an initial matter, per the Complaint, Dr. Steed applied for FMLA leave and *she* "submitted information regarding her medical issues to MetroHealth." Thus, MetroHealth could

not have invaded (and did not invade) Dr. Steed's privacy by accessing her medical information. (ECF No. 7, ¶ 102.) MetroHealth—in its capacity as Dr. Steed's employer—is entitled to certification in connection with Steed's FMLA application. *See* 26 U.S.C. § 2613 (to substantiate an employee's request for leave due to a "serious health condition," the FMLA permits an employer to request that the employee obtain certification of the condition from a healthcare provider). Receipt of such information from Dr. Steed surely does not constitute "access" of her health records "without Steed's permission." (*Id.* ¶ 311.) Moreover, MetroHealth's acceptance of information regarding her medical issues pertaining to her requested FMLA leave (*see e.g.*, *id.* at ¶ 228) is firmly in compliance with FMLA regulations. Thus, Dr. Steed's claim that MetroHealth improperly accessed her medical information fails as a matter of law.

> ### ii. MetroHealth's limited disclosure of the medical information is not publicity of a private facts because Dr. Steed herself put the information at issue.

The alleged publication by MetroHealth of Dr. Steed's medical information in the EEOC Position Statement does not constitute an invasion of privacy. To establish a claim for invasion of privacy by publication of private facts, a plaintiff must prove five elements:

(1)     there be publicity;

(2)     the facts disclosed must be those concerning the private life of an individual, not the public life;

(3)     the matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities;

(4)     the publication must have been made intentionally, not negligently; and

(5)     the matter publicized must not be a legitimate concern to the public.

16

*Patrick v. Cleveland Scene Pub. LLC*, 582 F. Supp.2d 939, 955 (N.D. Ohio 2008), *aff'd*, 360 F. App'x 592 (6th Cir. 2009), citing *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166-67, (Ohio Ct. App. 1985).

Dr. Steed alleges that MetroHealth violated her privacy rights by accessing her medical information pertaining to her FMLA leave (ECF No. 7, ¶ 317), sharing her medical information without permission to MetroHealth employees and outside legal counsel (*Id.* ¶ 318), and discussing her medical information within the EEOC position statement (*Id.* ¶ 319).

First, Dr. Steed cannot establish the requisite publicity element. "Publicity … means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Welling v. Weinfeld*, 113 Ohio St.3d 464, 474-72 (2007), quoting 1057 Restatement (Second) of Torts § 652D (internal quotation marks omitted). "Sharing information within the corporation with 'several' employees is not 'communicating the matter to the public at large.'" *Mitchell v. Fujitec Am., Inc.*, 518 F. Supp.3d 1073, 1097 (S.D. Ohio 2021), quoting *Early v. The Toledo Blade*, 130 Ohio App.3d 302 (1998); *see also Roberts v. Hagen*, No. 2845-M, 2000 WL 150766, at *3 (Ohio Ct. App. 2000) (noting that it is not an invasion of the right of privacy to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons and the matter is not substantially certain to become public knowledge).

In the Complaint, Dr. Steed states that MetroHealth shared her medical information with MetroHealth employees, counsel at Taft, and within the EEOC in the position statement. (ECF No. 7, ¶¶ 312, 318.) In other words, Dr. Steed alleges that her medical information was shared only to a small group of people. Further, Dr. Steed does not allege that the matter is substantially certain to become public knowledge. In fact, Dr. Steed herself acknowledges that the medical information

allegedly included in the Position Statement to the EEOC remains private and confidential and is not substantially certain to become public knowledge. (*Id.* ¶¶ 138, 313.) This Court cannot even access it absent a request to Dr. Steed, at which point, she indicated, it would be provided to the Court under seal. (*Id.* ¶ 313.) The Complaint itself makes clear that Dr. Steed's medical information pertaining to her FMLA leave has not been "made public." Thus, Dr. Steed's own allegations reflect that her claim fails.

Second, Dr. Steed does not allege disclosure of a private fact. "For an invasion of privacy claim to have merit, the publication must concern a truly private fact, not something that the plaintiff himself has already made public by, e.g., filing a civil lawsuit." *Lentz v. City of Cleveland*, No. 1:04CV0669, 2006 WL 1489379, at *4 (N.D. Ohio 2006) (citations and internal quotation marks omitted). By putting her health information at issue in the EEOC Charge and this Complaint, Defendants are permitted to disclose such information as necessary. *See e.g., Hageman v. Sw. Gen. Health Ctr.*, 119 Ohio St.3d 185, 190-91 (2008) (discussing waiver of the cloak of confidentiality that applies to <u>medical records when plaintiff made health an issue in the litigation</u>) (emphasis added); *Menorah Park Ctr. for Senior Living v. Rolston*, 164 Ohio St.3d 400, 411-12 (2020) (holding that doctors and hospitals had a qualified privilege to disclose patient information for the purpose of receiving payment for medical services, as long as the disclosure of information was the minimum amount necessary for the recovery of unpaid charges for medical services); *Gill v. Gill*, No. 81463, 2003 WL 132447 (Ohio Ct. App.) (affirming the trial court's holding that wife waived physician-patient privilege by introducing into evidence letters from treating physicians and by seeking custody of child); *Floyd v. SunTrust Banks, Inc.*, 878 F.Supp.2d 1316, 1325 (N.D. Ga. 2012) ("find[ing] that preserving and obtaining documents for the purpose of defending oneself in ongoing litigation is a legitimate purpose. And, that limiting the disclosure to the in-

house counsel assigned to the litigation and the outside counsel defending the suit is no further than necessary.").

Dr. Steed cannot claim that her medical information pertaining to her FMLA claim is a truly private fact because she filed charges with the EEOC and OCRC (ECF No. 7, ¶¶ 134, 307), as well as this lawsuit, all of which discuss Dr. Steed's FMLA Retaliation and Interference claims and put the validity of her FLMA claims at issue. Upon putting her FMLA claim at issue, MetroHealth was forced to protect its interests, which included relying on certain medical information for the FMLA leave. Dr. Steed acknowledges that, "as a result of" the Position Statement, her "[medical information] was improperly disclosed by MetroHealth to MetroHealth employees, MetroHealth's counsel at Taft, and the EEOC." (*Id.* ¶ 320.) However, it was not improperly disclosed, as it was not until Dr. Steed placed her medical information pertaining to FMLA leave at issue that MetroHealth disclosed any medical information of Dr. Steed. Because MetroHealth did not disclose any private facts in the EEOC Position Statement, this claim fails.

Accordingly, this Court should dismiss Dr. Steed's invasion of privacy claim for failure to allege either wrongful intrusion or publication of a private fact.

### E. Dr. Steed's Defamation Claim Against the Individual Defendants (Count V) Fails Because The Alleged Defamatory Statements Are Not Actionable.

#### i. A claim for defamation requires more than the allegations contained in Dr. Steed's Complaint.

Dr. Steed next asserts that MetroHealth and the Individual Defendants made defamatory statements. But Dr. Steed's claim for defamation fails because the statements complained of are insufficiently pled, truthful statements, statements of opinion, and/or subject to qualified privilege. Under Ohio law, "defamation occurs when a publication contains a false statement made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public

hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." *Croce v. New York Times Co.*, 930 F.3d 787, 792 (6th Cir. 2019), quoting *Am. Chem. Soc'y v. Leadscope, Inc.*, 133 Ohio St.3d 366, 389 (2012) (internal quotation marks omitted). To state a claim of defamation, the plaintiff must show:

> (1) that a false statement of fact was made;
>
> (2) that the statement was defamatory;
>
> (3) that the statement was published;
>
> (4) that the plaintiff suffered injury as a proximate result of the publication; and
>
> (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Id*.

None of Dr. Steed's allegations underlying her claim for defamation support such a claim. These allegations include:

- Individual Defendants relaying the statements of others in carrying out their legal duties that, even if they were defamatory, are protected by the qualified privilege;
    - Defendants Rajki, McBride, Partington, Barre and Rose informed the Board that they had received allegations that Dr. Steed used private drivers and planes improperly, improper hiring practices, having multiple DUIs and excessive drinking. (ECF No. 7, ¶¶ 30, 217.)
    - Defendant Rose sought to investigate Dr. Steed's travel expenses and solicited complaints against Dr. Steed. (*Id.* ¶ 219.)
    - Defendant Moss informed MetroHealth Board members that Dr. Steed was colluding with Dr. Boutros. (*Id.* ¶ 220.)

- Alleged statements that lack any factual substance or context;
    - Defendant Walker's statements at internal MetroHealth Board meetings and Foundation Board meetings. (*Id.* ¶ 214.)
    - Defendant Rose "harassed" Dr. Steed. (*Id.* ¶ 210.)

- The release of public records that are not alleged to be false; and
    - The Board "leaked" Dr. Steed's travel expenses as CEO of MetroHealth to the press following Dr. Steed's termination. (*Id.* ¶ 206.)

- o   Defendants Moss and Rose spread information regarding Dr. Steed's travel expenses and frequency to others at MetroHealth. (*Id.* ¶ 221.)

- Statements of opinion and not fact.
  - o   MetroHealth issued statements through Defendant Walker regarding Dr. Steed's termination. (*Id.* ¶¶ 142, 147.)

### ii.  The alleged statements regarding the Individual Defendants' handling and/or investigation of complaints raised about Dr. Steed are subject to qualified privilege.

The Individual Defendants cannot be liable for defamation for statements made when discharging their duties. A statement may be protected by qualified privilege and thus not defamatory when "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975). "A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Id.* "The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Id*. Once a qualified privilege has been established, the plaintiff may not recover, even if the statement is proven false, unless actual malice is demonstrated. *Id.* at 248. "In a qualified privilege case, 'actual malice' is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Jackson v. Columbus*, 117 Ohio St. 3d 328, 331 (2008).

Here, Dr. Steed's allegations are based on Individual Defendants' discharging their professional (and ethical) duties. Dr. Steed alleges that: (1) legal and compliance executives at MetroHealth (Defendants Rajki, McBride, Partington, and Barre) and the Board's Liaison (Defendant Rose) *repeated allegations they had received in their professional capacity* to the Board that Dr. Steed used private drivers and planes improperly, engaged in improper hiring

practices, and had multiple DUIs and drank excessively (*id.* ¶¶ 30, 217); (2) a Board member (Defendant Moss) informed other MetroHealth Board members that Dr. Steed was colluding with Dr. Boutros (*id.* ¶ 220); and (3) a Board member (Defendant Moss) and the Board Liaison (Defendant Rose) discussed information regarding Dr. Steed's travel expenses and frequency to others at MetroHealth (*id.* ¶ 221).

These statements—even if they were considered defamatory statements of fact—meet the requirements for the application of qualified privilege. As a threshold matter, Defendants Rajki, McBride, Partington, and Barre are not alleged to have made false statements of fact themselves, but allegedly passed on along statements of others. Regardless, the alleged defamatory statements made by the Individual Defendants were made in the discharge of their duties as MetroHealth executives and Board members. Much like Dr. Steed felt that she had an obligation to report alleged unlawful conduct (*id.* ¶ 137), the Individual Defendants, as attorneys and compliance professionals with an ethical duty of loyalty to MetroHealth, are obligated to report concerns that have been reported to them. Further, as fiduciaries to MetroHealth, Board members and the Board's liaison have legal duties to identify and raise concerns that may impact the public hospital. Dr. Steed's allegations do nothing more than establish that the Individual Defendants acted to fulfill their responsibilities to MetroHealth.

And Dr. Steed does not demonstrate or provide any supporting allegations to establish that any of these statements were made with actual malice. Her conclusory allegation that the statements were "all false and were made with actual knowledge or with reckless disregard for their truth or falsity" is simply not enough. (*Id.* ¶ 222.). Accordingly, Dr. Steed's defamation claim as to these statements – which are the only allegations supporting a claim for defamation against

the legal and compliance professionals (Defendants McBride, Rajki, Partington, and Barre)—should be dismissed.

### iii. Dr. Steed alleges statements that plainly cannot meet the pleading standard required for a claim of defamation because they are not alleged to be false statements of fact.

In other instances, Dr. Steed has failed to allege that the Individual Defendants made any defamatory statements. Dr. Steed must allege that a "false statement of fact was made." *Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015). Under Ohio law, a false statement is one "that sets forth matters which are not true or statements without grounds in truth or fact. A statement is not a false statement if, even though it is misleading and fails to disclose all relevant facts, the statement has some truth in it. Moreover, a statement that is subject to different interpretations is not false." *Id.* at 633 (quotation and citation omitted).

Then, the defamation analysis has two parts: 1) reviewing the specific language of the statements at issue to determine its meaning and attendant "factual implications;" and 2) determining whether the statements are verifiable. *Bentkowski v. Scene Mag.*, 637 F.3d 689, 694 (6th Cir. 2011), quoting *Wampler v. Higgins*, 93 Ohio St.3d 111 (2001) (internal quotation marks omitted). "The Ohio Supreme Court has stated that if a statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content." *Id.*, quoting *Scott v. News–Herald*, 25 Ohio St.3d 243 (1986) (internal quotation marks omitted).

Dr. Steed stops short of providing any allegations or context to support that the statements were actually false. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding the pleading standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *see also Lloyd v. Cannon*, No. 4:21-CV-1476, 2022 WL 5161424, at *12 (N.D. Ohio Oct. 5, 2022), *aff'd*, No. 22-3878, 2023 WL 7182130 (6th Cir. June 27, 2023) ("Plaintiff's allegation that [defendant]

23

published defamatory statements online also fails because there is no content or context as to what the statements were.").

Dr. Steed alleges as defamation "statements by Defendant Walker at internal MetroHealth Board meetings and Foundation Board meetings." (ECF No. 7, ¶ 214.) Here, there is no content or context as to what the statements were. There is no allegation that these "statements" were either false or factual. Nor can the vague identification of "statements" be deemed defamatory as there is no indication what that statements were. Similarly, her allegations that Defendant Rose "harassed" Dr. Steed (*id*. ¶ 210) do not qualify as statements of fact made by Defendant Rose that have factual content, nor are they verifiable. Moreover, Dr. Steed has failed to plead how any of these statements are defamatory and how they have caused her injury. Accordingly, the defamation claim as to these statements also should be dismissed.

### iv.   Dr. Steed complains of statements that are truthful.

Truth is an absolute defense to a claim for defamation. *Maddox Def., Inc. v. GeoData Sys. Mgmt., Inc.*, 135 N.E.3d 1212, 1224 (Ohio Ct. App. 2019); O.R.C. § 2739.02 ("Proof of the truth thereof shall be a complete defense."); *see also Bukowski v. Hall*, 165 F. Supp. 2d 674, 678 (N.D. Ohio 2001), citing *Kilroy v. Lebanon Correctional Inst.*, 61 Ohio Misc.2d 156, 161 (1991).

Dr. Steed complains that the Board "leaked" Dr. Steed's travel expenses as CEO of MetroHealth to the press following Dr. Steed's termination. (ECF No. 7, ¶ 206.) As an initial matter, MetroHealth could not have "leaked" Dr. Steed's travel expenses because they are a public record subject to disclosure under the Ohio Public Records Act. *See* O.R.C. § 149.43(A)(1); *State ex rel. Fair Hous. Opportunities of Nw. Ohio v. Ohio Fair Plan*, 172 Ohio St.3d 149 (2022). Further, Dr. Steed does not allege that the public record data regarding her expenses are in any way false. Instead, she complains about hypothetical statements to the press without actually

identifying so much as a misleading statement. The travel expenses speak for themselves and as the identified "statement of fact" is one of truth, it does not meet the elements required for a defamation claim and must be dismissed.

### v. Dr. Steed complains of statements that constitute Defendants' opinion, as opposed to statements of fact.

As a matter of law, statements of opinion cannot form the basis of Dr. Steed's defamation claim. Expressions of opinion are protected under the Ohio Constitution and therefore cannot constitute defamation under state law. *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (citing *Vail v. Plain Dealer Publ'g Co.*, 72 Ohio St.3d 279 (1995), *cert. denied*, 516 U.S. 1043 (1996). To determine whether a statement constitutes protected opinion or actionable fact, courts consider the totality of the circumstances, including: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared. *Bentkowski*, 637 F.3d at 693-94. Whether allegedly defamatory language is opinion or fact is a question of law to be decided by the Court. *Harris*, citing *Scott v. News-Herald*, 25 Ohio St.3d 243, 250 (1986).

MetroHealth's statements through Defendant Walker regarding Dr. Steed's termination are clear statements of opinion. (ECF No. 7, ¶¶ 142, 147, 204.) The alleged statements are:

> It has become clear that the Board and Steed fundamentally disagree about the priorities and performance standards needed from our CEO for MetroHealth to fulfill its mission
> . . .
> [w]e believe Steed's performance is not meeting the needs of MetroHealth. As a result, we have lost confidence in her ability to lead the organization going forward and believe it would not be in the best interest of the System for her to continue in her position. Therefore, we are exercising our right to terminate her at-will contract.
> . . .
> We had high expectations when she arrived in 2022 and are sorry those expectations have not been met[.]

25

(*Id.* ¶ 142.)

> This was purely an issue of the CEO's failure to perform and entirely based on her direct interactions with the Board of Trustees. . .The performance issues that caused us to act are long-standing and were made clear to her on numerous occasions. She failed for months to address them. Because of that, we lost confidence in her ability to lead the System and felt we had no choice but to end her at-will employment agreement.

(*Id.* ¶ 147.)

Far from constituting false and disparaging facts, (ECF No. 7, ¶¶ 204, 205), these statements are protected opinions made on behalf of MetroHealth. Statements like "[*w*]*e believe* Steed's performance is not meeting the needs of MetroHealth" (*id.* ¶ 142) (emphasis added), and "we lost confidence. . . and felt we had no choice" (*id.* ¶ 147) merely reflect the Board's assessment regarding Dr. Steed's performance. It is their opinion, not a verifiable fact, and therefore not actionable under a defamation claim.

None of the alleged bases for Dr. Steed's claim for defamation meet the requirements of Ohio law. Accordingly, Count V should be dismissed as to each Defendant.

## V.    CONCLUSION

For the reasons set forth above, all claims asserted against the Individual Defendants – those individuals being two of MetroHealth's volunteer board members, MetroHealth's Board Liaison, and current and former attorneys and compliance professionals—should be dismissed. Additionally, certain of the claims brought by Dr. Steed against MetroHealth should also be dismissed.

Granting this motion in full will limit this matter to only those parties that should be at issue in an employment dispute—Dr. Steed (the employee) and MetroHealth (the employer) — and to the claims that have been properly pled. As such, Defendants respectfully requests that the

Court dismiss Counts IV, V, IX, and X of Dr. Steed's Amended Complaint.

Dated: May 7, 2025                                   Respectfully submitted,

                                                    */s/ Adrian D. Thompson*
                                                    Adrian D. Thompson (0036742)
                                                    athompson@taftlaw.com
                                                    John R. Mitchell (0066759)
                                                    jmitchell@taftlaw.com
                                                    Philip Williamson (0097174)
                                                    pwilliamson@taftlaw.com
                                                    Allison McFarland (MA703697)
                                                    amcfarland@taftlaw.com
                                                    TAFT STETTINIUS & HOLLISTER LLP
                                                    200 Public Square, Suite 3500
                                                    Cleveland, OH 44114-2302
                                                    Phone: (216) 706-3912
                                                    Facsimile: (216) 241-3707

                                                    *Attorneys for Defendants*

## **LOCAL RULE 7.1(F) CERTIFICATION**

I hereby certify that this case has not been assigned to any track. I hereby further certify that on May 2, 2025 this Court granted Plaintiff's Motion to File an Oversized Brief granting Defendants a total of 30 pages. This Memorandum complies with those modifications to Local Civil Rule 7.1(f).

*/s/ Adrian D. Thompson*
Adrian D. Thompson (0036742)

*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2025, a true and accurate copy of the foregoing was filed electronically via the Court's electronic filing system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

*/s/ Adrian D. Thompson*
Adrian D. Thompson (0036742)

*Attorney for Defendants*